THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PATRICK FLANNAGAN and MICHAEL MAGGIO, Respondents.

First Department, March 10, 1977

*Harry I. Katz* of counsel *(Peter L. Zimroth* with him on the brief; *Robert M. Morgenthau, District Attorney)*, for appellant.

*James A. Benard* for respondents.

MARKEWICH, J. On a September evening in 1975, a lady, at the window of her second-floor apartment overlooking the building's lobby entrance, overheard a conversation emanating from the sidewalk just below her, between the occupant of white-topped tan automobile and another person next to the car. One said that he had a gun and would like to shoot some unnamed person. She telephoned police at once, advising in detail what she had seen and heard; the dispatcher promptly alerted two radio patrol cars, giving the description of the car which he had just heard and noting that a gun was involved. (The transcripts of the taped records of both the broadcast and the telephone call were exhibits at the suppression hearing here reviewed.) Two police cars sped to the scene, arriving just as the tan and white car moved away. It had gone no more than a block when it was stopped by the police cars, one in front of and the other behind it. Two policemen proceeded separately to each side of the car to ask the two occupants for identification. The driver left his seat to go to the trunk in search of a missing portion of identification. A third policeman coming from the police vehicle in front of defendants' car and walking along its right side toward its rear, saw, through the open window, a small caliber shell on the floor near the front passenger seat. Opening the door, he recovered the shell and, looking further, found a Smith & Wesson .32 revolver under that seat. Defendants were arrested. The same officer then took a loaded automatic pistol from an attaché case on the front seat; a subsequent investigatory search revealed a third loaded handgun and a quantity of ammunition in the vehicle.

A motion to suppress the physical evidence, i.e., the guns, was granted, the hearing Justice stating that he agreed with the defense contention "that a police stopping and questioning of this kind, concerning possible criminal conduct, must be based upon at least a reasonable suspicion of criminality." The focal point pinpointed by the court was therefore the police order to pull to the curb. If the stop was proper, then it

follows that police conduct in asking for identification prelimi-
nary to investigation by questioning was also proper. If the
stop was proper, it was also proper for one of the officers to
look through the window and, spurred further by seeing an
expended shell in open view, to proceed with the activity
which produced the first gun. And the finding of the second
and third guns followed in sequence.

We hold the stop to have been proper. "The crucial factor is
whether or not the police behavior can be characterized as
reasonable which, in terms of accepted standards, requires a
balancing of the interests involved in the police inquiry".
*(People v De Bour,* 40 NY2d 210, 217.) In the circumstances
found, the police behavior was eminently reasonable. The
information supplied over radio to the investigating officers,
though sparse, was sufficient, according to the transcribed
tape in evidence, to apprise them that at "140 East 40 Street"
there was "a person with a gun beside a tan auto with a white
top". (So in one broadcast; in another the "person" was "by a
tan auto" etc.) Proceeding to the scene, they saw no person,
but the described car as it was leaving the curb. In the context
of happenings, it would have been reasonable to assume that
the "person with a gun" was departing in the car or, at the
very least, that the car's occupant(s) might well have some
knowledge of the "person with a gun" who had been "by" or
"beside" the very car the police were following. The approach
to and stop of the car were peaceful and without threat. There
was no show of force and a complete exercise of restraint. The
confrontation, even if description requires such a strong word,
did not proceed beyond the step of a request for identification
when one of the police spotted the suspicion-arousing shell.

And, if more than a "suspicion of criminality" were to be
required beyond that point, it must be borne in mind that
"the police as a whole were in possession of information
sufficient to constitute probable cause" and these officers were
acting "as a result of communication with a * * * brother
officer". *(People v Horowitz,* 21 NY2d 55, 60.) This is no case of
an anonymous informer, giving an incomplete or ambiguous
description. She identified herself when calling on the 911
line; she specified the overheard words indicating the possibil-
ity of homicide; she gave a clear description of the vehicle
employed; she testified at the suppression hearing; she was
obviously trustworthy or else she risked prosecution under
section 240.50 of the Penal Law. The entire police action was

thoroughly reasonable, and was justified more by a certainty of criminality than by a "reasonable suspicion." The motion to suppress should have been denied.

In the circumstances, it is our clear duty to do what should have been done at Trial Term. The order of Supreme Court, New York County (DENZER, J.), entered April 1, 1976, should be reversed, on the law and the facts, and the motion to suppress denied.

MURPHY, J. P., LUPIANO, CAPOZZOLI and LANE, JJ., concur.

Order, Supreme Court, New York County, entered on April 1, 1976, unanimously reversed, on the law and the facts, and the motion to suppress denied.