## The People of the State of New York, Appellant, v Lawrence Green, Respondent.

Second Department, September 24, 1984

**APPEARANCES OF COUNSEL**

*John J. Santucci, District Attorney (Steven J. Rappaport* of counsel), for appellant.

*William E. Hellerstein (Donald W. Searles* of counsel), for respondent.

### OPINION OF THE COURT

Thompson, J. P.

While on patrol in a marked radio car with a fellow officer at approximately 1:30 P.M. on April 21, 1983, Police Officer James Shyne received a radio run reporting shots fired in the vicinity of 142nd Street and Rockaway Boulevard. Arriving at the scene within approximately two minutes, the police were waved down by a man who identified himself as Kenneth Tolliver. Tolliver reported that a friend, Lawrence Green, had attempted to shoot him three times but the gun failed to fire. The police were directed to what was apparently the only apartment on the second floor of a building located at 142-90 Rockaway Boulevard.

Shyne and other officers went to the apartment on the second floor, and upon discovering the door partly open, Shyne, with gun drawn, announced that the police were there and were coming in. Upon entering the apartment, Shyne observed an older woman in the living room, and he observed defendant and another man emerge from a bedroom, approximately 12 to 15 feet away from the point of Shyne's entrance into the premises. Both men were put up against a wall and frisked. Neither was found to be in possession of a weapon. Tolliver, having entered the apartment, identified defendant as the person who had attempted to shoot him. Defendant was arrested and handcuffed, and the second person who had emerged from the bedroom was released.

Shyne then entered the room that defendant had emerged from. Shyne testified that he entered the room to look for the gun in issue. When he was approximately three feet from the bedroom window, he observed a .22 caliber revolver on the windowsill, between the inside window and the screen. The gun had four live rounds, and three of the rounds had indentations in them. After receiving his *Miranda* rights, defendant told both Shyne and Detective Lawrence Andrews that he had found the gun.

Upon these facts, Criminal Term concluded that the warrantless entry into the subject premises violated defendant's constitutional rights pursuant to the dictates of *Payton v New York* (445 US 573). The gun and the statements were suppressed as "Fruits of the Poisoned Tree". The gun was also suppressed on the independent ground that "the defendant and the premises were secured at the time by four armed police officers who had ample opportunity to obtain a search warrant. (See People V. Knapp 52 NY2d 689)." We now reverse.

When the police want to enter a private dwelling to effect an arrest, they are generally required to obtain an arrest warrant, but a warrant is not required if exigent circumstances exist (*Payton v New York, supra*). In determining whether exigent circumstances exist, the courts consider a number of factors, including, *inter alia,* (1) the gravity or violent nature of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether

there is a reliable basis for believing the person being sought is in the premises in issue; (4) the possibility the suspect will escape; (5) whether there has been a clear demonstration of the existence of probable cause to make an arrest; and (6) the time of day of the entry and whether the entry was peaceful in nature (*People v Mealer*, 57 NY2d 214, cert den 460 US 1024; *United States v Campbell*, 581 F2d 22; *United States v Reed*, 572 F2d 412, cert den *sub nom. Goldsmith v United States*, 439 US 913; *Dorman v United States*, 435 F2d 385).

Before addressing the issue of whether exigent circumstances existed in this case, it is important to note that the information received from Kenneth Tolliver could properly be deemed reliable by the police. The police were able to observe Tolliver's facial expression and emotional state (*People v De Bour*, 40 NY2d 210, 224). He would have been subject to criminal prosecution had he knowingly imparted false information to them (*People v Flannagan*, 56 AD2d 289; Penal Law, § 240.50). Because of the potentially dangerous situation that existed, the police were not in a position to evaluate Tolliver's veracity at length (*People v Lenart*, 91 AD2d 132). Under the circumstances, the police were justified in acting upon Tolliver's information.

The information indicated that the grave and potentially violent crime of attempted murder had just occurred. The defendant was believed to be armed, and based upon Tolliver's allegations, there was probable cause to make an arrest. Tolliver's recent and detailed information provided a basis for believing defendant was in the specific apartment entered, and the entry was made in the afternoon through the relatively peaceful means of pushing the partially opened door to the apartment fully open. Although there is no indication that defendant was aware of the presence of the police or was otherwise seeking to escape, there is no indication that he was not seeking to escape or that he felt free to simply proceed with his daily routine after having attempted to shoot somebody. Under the totality of the circumstances, we conclude that the warrantless entry into defendant's apartment was proper because of the existence of exigent circumstances.

At the outset of our evaluation of whether Officer Shyne acted reasonably when he entered the bedroom without first obtaining a search warrant, it is essential to note that Shyne's subjective intent in entering the room is not of overriding importance because our determination is based upon an objective standard of whether his conduct was reasonable. As stated in *Scott v United States* (436 US 128, 138), "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action". Subjective intent does not make otherwise lawful conduct illegal or unconstitutional. If Officer Shyne's entry into the room in issue was justified on a purely objective basis, the goal of deterring illegal police conduct and maintaining the integrity of the judiciary would not be served by application of the exclusionary rule (see *People v Lopez,* 95 AD2d 241). The exclusionary rule is to be applied only after there has been an unreasonable search or seizure.

After arriving in the apartment and frisking defendant and the other person who emerged from the bedroom with defendant, which took place within minutes of responding to the radio run and consulting with Tolliver, Officer Shyne had probable cause to believe the weapon was in the apartment. He did not know who else was in the apartment, but he did know he had encountered at least two people in the apartment who he was unaware would be there when he entered the apartment. Under these circumstances, Shyne had a right to conduct a security check of the premises to search for other persons who could pose a threat to the safety of the officers present or destroy evidence. As stated in *United States v Agapito* (620 F2d 324, 335-336, cert den 449 US 834):

"The general rule of course is that a warrantless search of a dwelling or, as in this case, a hotel room, is constitutionally prohibited, even though there may be probable cause for the search. *Vale v. Louisiana,* 399 U.S. 30, 34 (1970); *Chimel v. California,* 395 U.S. 752, 760-62 (1969). Under certain circumstances, however, immediately following an arrest, law enforcement officers without a warrant may be permitted to conduct a security check — a very

quick and limited pass through the premises to check for third persons who may destroy evidence or pose a threat to the officers. *United States v. Christophe*, 470 F.2d 865, 869 (2 Cir. 1972), cert. denied, 411 U.S. 964 (1973).

"The reasonableness of a security check is simple and straightforward. From the standpoint of the individual, the intrusion on his privacy is slight; the search is cursory in nature and is intended to uncover only 'persons, not things.' *United States v. Bowdach*, 561 F.2d 1160, 1168 (5 Cir. 1977). Once the security check has been completed and the premises secured, no further search — be it extended or limited — is permitted until a warrant is obtained. From the standpoint of the public, its interest in a security check is weighty. The delay attendant upon obtaining a warrant could enable accomplices lurking in another room to destroy evidence. More important, the safety of the arresting officers or members of the public may be jeopardized. Weighing the public interest against the modest intrusion on the privacy of the individual, *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977); *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968), a security check conducted under the circumstances stated above satisfies the reasonableness requirement of the Fourth Amendment" (see, also, *United States v Gardner*, 627 F2d 906).

It has been stated that "a police officer's safety is an important consideration in the resolution of Fourth Amendment issues" and determinations of reasonableness should not be based upon *"abstract or illusory"* concepts of police-citizen encounters, but rather upon the realities of a world in which attacks on the police are almost commonplace (*People v Finlayson*, 76 AD2d 670, 678, 680, application for lv to app den 51 NY2d 1011, cert den 450 US 931). The consequences of Officer Shyne, not knowing what happened to defendant's gun, simply turning his back to the room defendant had emerged from, without ascertaining who else might be lurking in the room, could have been lethal. It was therefore perfectly proper for Shyne to enter the room as part of a limited security check of the premises. The limited intrusion upon defendant's reasonable expectations of privacy were far outweighed by the need to make certain that a potentially volatile situation was not ignored while a search warrant was obtained.

Upon entering the bedroom, Shyne did not engage in an exploratory rummaging or a search through drawers (see *People v Clements,* 37 NY2d 675, cert den *sub nom. Metzger v New York,* 425 US 911). He saw the gun in plain view on the windowsill. The initial intrusion which brought Shyne within plain view of the gun was supported by an exception to the warrant requirement. Therefore, the seizure of the gun was proper (*Coolidge v New Hampshire,* 403 US 443).

*People v Knapp* (52 NY2d 689), relied upon by Criminal Term, is fully consistent with our analysis. In *Knapp,* the police conducted a prohibited warrantless search of the premises only after they assured themselves of complete control of the house and its occupants (see, also, *Mincey v Arizona,* 437 US 385, 393). In our situation, the entry into the bedroom was supported by the need to assure the police of their safety in the first instance. As was stated in *Warden v Hayden* (387 US 294, 298-299): "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape".

The record on appeal contains no basis for suppressing the statements made by defendant following his arrest and the giving of *Miranda* warnings. Accordingly, defendant's motion to suppress evidence should be denied in its entirety, and the matter remitted to the Supreme Court, Queens County, for further proceedings consistent herewith.

BRACKEN, RUBIN and EIBER, JJ., concur.

Order of the Supreme Court, Queens County, dated October 21, 1983, reversed, on the law and the facts, motion to suppress denied and matter remitted to the Supreme Court, Queens County, for further proceedings.