■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD HYSMITH, Appellant. [637 NYS2d 447] —Appeal by the

defendant from a judgment of the County Court, Westchester County (Lange, J.), rendered April 29, 1994, convicting him of rape in the first degree, sodomy in the first degree, sexual abuse in the first degree (two counts), and unlawful imprisonment in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain physical evidence.

Ordered that the judgment is affirmed.

At approximately 3:20 A.M. on October 29, 1992, Mount Vernon Police Detective William Heckett responded to a radio transmission he had received from another officer, which had stated that a woman had just been raped. The victim, who was upset and shaking, told the Detective that the rape had "just happened". She further related that she had been abducted from the street by a black male, who wielded what she believed was a knife, and taken to an apartment, where she was raped and sodomized. She also told him that she had escaped by crawling out a window of the basement apartment after the perpetrator fell asleep. Detective Heckett observed a large bruise on the victim's neck and shoulder. As the Detective and the victim, along with another detective and officer, proceeded towards the area of the subject apartment, the victim described the clothing she had been wearing, and the "Ninja Turtle" sheets on the bed on which she had been raped. When they arrived at the location, which was an apartment house with two adjoining basement apartments, the victim pointed to the window through which she had escaped.

Detective Heckett, along with another detective and police officer, proceeded to the identified apartment and knocked on the ajar door. When no one responded, they entered the illuminated apartment and immediately observed the victim's clothing, as well as the "Ninja Turtle" sheets on a bed in the first room of the apartment. Detective Heckett also saw a black sweater lying on the bed with the victim's clothing. After it was determined that the suspect was not present, Detective Heckett brought the victim into the apartment, where she "verified" the clothing and the sheets.

In their search for the suspect, the officers also entered the adjoining apartment through an ajar door. At that time, the Detective observed a 12-inch long "gutter spike", described as a big nail, lying on a couch immediately in front of the door. The suspect was not present. Upon leaving the premises, the Detective seized the victim's clothing, the sheets, the sweater, and the spike. When asked why he had seized the sweater, the

Detective stated that "the knit type of sweater that it was * * * appeared to match the bruise and disfigurement on [the complainant's] neck area", which he had observed prior to his entry into the apartment.

The defendant's witness at the suppression hearing testified that he and the defendant lived together in the adjoining apartments. They thus had access to "the whole downstairs", sleeping and eating in both of the adjoining apartments.

On these facts, the court denied the defendant's motion to suppress the evidence gathered from the two apartments. We affirm.

Applying the relevant factors (see, People v Green, 103 AD2d 362, 363-364), we find that exigent circumstances permitted the warrantless entry by the police (see, People v Williams, 181 AD2d 474). Under the circumstances, the information provided by the victim was properly deemed reliable by the police (see, People v Green, supra). The police were informed that she had just been raped and they were given reason to believe that her assailant was armed (see, People v Williams, supra, at 475). Further, the police had probable cause to believe that a person in the subject adjoining apartments had committed the crime (see, People v Williams, supra), because the victim had told them that her assailant had been present and sleeping at the time she had fled minutes earlier. In addition, while there is no indication that the suspect was aware of the presence of the police or was otherwise seeking to escape, "there is no indication that he was not seeking to escape" (People v Green, supra, at 364).

Because the officers were legally in the subject apartments searching for the suspected rapist, they were permitted to seize the incriminating items which they had observed in plain view (see, Warden v Hayden, 387 US 294; People v Diaz, 81 NY2d 106; People v Johnson, 204 AD2d 350). Specifically, the sheets, the victim's clothing, the sweater, and the "gutter spike" were all observed in plain view during the lawful search for the defendant and the incriminating nature of these items was immediately apparent.

The defendant's remaining contentions are either unpreserved for appellate review or without merit. Mangano, P. J., Miller, Ritter and Pizzuto, JJ., concur.