THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CHARLES NIMMONS, Respondent.

Second Department, December 12, 1977

### APPEARANCES OF COUNSEL

*Eugene Gold, District Attorney (Richard A. Finkel* of counsel), for appellant.

*William E. Hellerstein (Susan L. Yarbrough* of counsel), for respondent.

### OPINION OF THE COURT

HAWKINS, J.

The question before this court is whether, under the circumstances, Criminal Term correctly suppressed the weapon

taken from the defendant during a frisk which resulted from the mistaken identification of defendant by police officers as a suspect involved in the robbery of the occupant or occupants of a taxicab.

During February, 1974 Detective Dennis Conlon, of the New York City Police Department, was assigned to investigate a robbery involving a taxicab by "a male-female stick-up team." Conlon's investigation led to the arrest of one Diane Lavorpoole. At the time of that arrest Lavorpoole told Conlon that an accomplice, known to Conlon as "Judge" Wade, had used a loaded revolver during the robbery; that he normally carried a gun with him; and that at one time he had shot at her and threatened to kill her.

On February 7, 1974 Lavorpoole telephoned Conlon and advised him that she had seen Wade. Thereafter, Conlon, accompanied in an unmarked police car by Lavorpoole and two other police officers, Scoma and McDonald, drove to the vicinity of Ralph Avenue and Dean Street, where Wade had been observed by Lavorpoole. While en route she informed the officers that Wade was Black; that he was about 5 feet and 8 or 9 inches tall and of a slim to medium build; and was wearing green pants and a black coat. She also advised them that Wade had said that he would "ice any cop that came near him." Either Lavorpoole or Conlon told at least one of the other officers that Wade was usually armed.

After cruising the area around Ralph Avenue and Pacific Street for about 20 minutes, Lavorpoole suddenly said "that's him on the corner up there on the left", or "that's him over there". The officers' attention was directed to two Black males engaged in conversation on the northwest corner of the intersection of Ralph Avenue and Pacific Street. Each was dressed in green pants and a black coat.

Conlon then drove the car to the curb in front of the two men. Scoma and McDonald alighted first with their guns drawn and directed both individuals to put up their hands and stand against the wall. Scoma, assuming that defendant was the suspect, Wade, patted him down and found a gun. McDonald told Wade not to worry, "it's the other guy we want." However, at that point, Lavorpoole screamed (referring to defendant), "that's not him. It's the other guy"; whereupon Wade was also arrested.

The central issue is whether there was probable cause for frisking the defendant-respondent. Concededly, the first frisk-

ing of defendant involved a case of mistaken identity. It is also equally apparent that the initial encounter by the police was not a pretext.

The most recent pronouncement on this question was had by the Court of Appeals in *People v Prochilo* (41 NY2d 759). In the three appeals involved in *Prochilo,* it is interesting to note that the only reversal of an order of suppression was in the third, *People v Bernard.* There suppression was ultimately granted because there was nothing in the officer's testimony which indicated (p 763) that he was "apprehensive for his own safety." *Prochilo* postulates three aspects of each individual transaction which "should be considered": (1) Was there a reasonable basis for the police officer's belief that the defendant had a gun; (2) Was the manner of the officer's approach and seizure of the gun reasonable under the circumstances and (3) Was the stopping and frisking a mere "pretext" or were the police "motivated by improper or irrelevant purpose?" In my opinion, in this case, the answer to the first two questions should be in the affirmative, and to the third in the negative. Thus, suppression of the subject weapon should have been denied.

The pertinent authorities do not require a police officer to exert extraordinary prescience. There were present exigent circumstances, more than ordinarily compounded by the presence of the informant, who was an accomplice of the party subsequently frisked. As in *People v Cantor* (36 NY2d 106, 109), either "probable cause" or exigent circumstances" can justify a warrantless search. Surely the accomplice's several exclamations constituted probable cause. That it was subsequently ascertained that the police were understandably mistaken in seizing one of the two men does not invalidate the warrantless search.

An instance of mistaken identity rather akin to the matter at bar was before the Supreme Court of the United States in *Hill v California* (401 US 797). There the police, who had probable cause to arrest the defendant, arrested another in defendant's apartment, reasonably believing the person arrested to be the defendant. *Hill* holds that the police were entitled to do what the law would have allowed them to do if the arrestee had, in fact, been the defendant, i.e., to conduct a search incident to the arrest and to seize evidence of the crime which the police had probable cause to believe had been committed. The court expressly held (p 804): "Here there was

probable cause to arrest Hill and the police arrested Miller in Hill's apartment, reasonably believing him to be Hill. In these circumstances the police were entitled to do what the law would have allowed them to do if Miller had in fact been Hill, that is, to search incident to arrest and to seize evidence of the crime the police had probable cause to believe Hill had committed."

Understandably, defendant urges that *Hill* is readily distinguishable. The distinguishing factors posed are that in *Hill* the accomplice did not accompany the police; that in *Hill* there was a "good faith" and "understandable mistake"; and, lastly, that the informant-accomplice here was able to "distinguish" Wade from the defendant "instantaneously". None of these purported distinctions justifies holding contrary to *Hill*. The abiding factors persist: there was a mistake, made in good faith, and with more than ordinary probable cause. In sum, the evidence was obtained fortuitously, not unconstitutionally.

Accordingly, the order appealed from should be reversed, and the motion to suppress denied.

COHALAN, J. (dissenting). The case of *Hill v California* (401 US 797), relied upon in part by the majority, is distinguishable. There the police had probable cause to arrest Hill and search his premises. In his absence from his apartment they entered and arrested another man, despite his protestations, in the reasonable belief that he was Hill; and as an incident to the arrest, they conducted a search of the premises.

The distinguishing factor at bar is that the woman accomplice accompanied the police in their search for Wade and promptly informed them that Nimmons (who was with Wade at the moment of arrest) was the wrong man. In my judgment Nimmons was entitled to the order of suppression.

TITONE and SUOZZI, JJ., concur with HAWKINS, J.; COHALAN, J., dissents and votes to affirm the order with a memorandum.

Order of the Supreme Court, Kings County, entered October 19, 1976, reversed, on the law and the facts, and motion to suppress physical evidence denied.