■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IVON WRIGHT, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Donnelly, J.), rendered April 23, 1981, convicting him of criminal possession of a weapon in the third degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of defendant's motion to suppress a weapon. ¶ Judgment affirmed. ¶ By Kings County indictment No. 3451/79, defendant was accused of the crime of criminal possession of a weapon in the third degree. He moved before trial for an order suppressing the weapon, alleging that it was seized after he was unlawfully detained by law enforcement officers. ¶ The testimony adduced at the suppression hearing established that on November 7, 1979, while on anticrime patrol in a taxicab with two other plain-clothes officers, Detective Michael Norrito and Officer Roberto Carter noticed defendant at a distance of 30 to 35 feet standing near the intersection of Flatbush and Snyder Avenues. They agreed that defendant resembled a photograph of one Dwayne Demeron who was then a suspect in an investigation of a burglary and an assault. These

crimes had been committed near Flatbush and Foster Avenues sometime before November 7. ¶ The photograph of Demeron had been given to Detective Norrito and Officer Carter by the detective investigating the burglary and assault. A description of Demeron provided to the investigating detective by Demeron's wife was written on the blank side of the photograph. Demeron's wife had also provided the police with information which led to the recovery of the proceeds of the burglary from a vacant apartment. ¶ Upon seeing defendant, and agreeing that he resembled Demeron's photograph, Detective Norrito and Officer Carter exited from the taxicab. The detective approached defendant with the intent of requesting him to identify himself. Officer Carter followed and positioned himself behind, and to the rear of, defendant. Detective Norrito and the officer displayed their badges and identified themselves; their weapons were not drawn. The detective requested defendant to remove his hands from his pockets; defendant failed to comply. The request was thereafter twice repeated with no response from defendant. Fearing for his safety, the detective drew his weapon and placed his hand over the defendant's right hand pocket. Defendant began to remove his hand from his pocket and Detective Norrito felt a gun. The detective warned Officer Carter that defendant had a gun, removed it from defendant's pocket, and handed it to the officer. The gun was examined by Officer Carter and found to have two live rounds of ammunition in its chamber. ¶ Defendant was arrested and taken to the precinct for processing. While taking pedigree information from defendant to complete the arrest report, Detective Norrito and Officer Carter realized that it was not Dwayne Demeron who they had just arrested. ¶ On the basis of this testimony and Demeron's photograph, which had been admitted into evidence as part of the People's case at the hearing, the suppression court concluded that Detective Norrito and Officer Carter had ample authority to stop defendant. The court also concluded that the seizure of the weapon, after defendant failed to remove his hands from his pockets, was justified. We agree. ¶ In *People v Finlayson* (76 AD2d 670, 674-675, mot for lv to app den 51 NY2d 1011, cert den 450 US 931), this court noted: "It is settled that, under appropriate conditions, an officer may briefly detain and question a suspect in a public place on information not amounting to probable cause, for, until an actual arrest occurs, the Constitution demands only that the action of the police be justified at its inception and reasonably related in scope and intensity to the circumstances surrounding the encounter * * * In assessing such encounters, we speak of a 'seizure' even where the officer does not lay hands on the suspect because we recognize that the guarantees of the Fourth Amendment are implicated whenever the police interfere in any significant way with a citizen's freedom of movement * * * Thus, in measuring the lawfulness of police conduct, we are called upon to strike a balance between the citizen's inestimable right to personal liberty and security — his 'right to be let alone' * * * — and the degree to which the seizure is necessary to advance the public interest in the detection of crime and the apprehension of criminals * * * And in weighing those interests the standard to be applied is that of reasonableness, the touchstone of the Fourth Amendment * * * For '[i]t must always be remembered that what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.' " We are convinced that under the circumstances at bar a sufficient predicate existed to temporarily detain defendant on the street. Having observed a person who resembled the photograph of a suspect in a burglary and assault investigation, Detective Norrito and Officer Carter acted reasonably when they approached defendant for the purpose of ascertaining whether he was the suspected burglar (see *People v DeBour,* 40 NY2d 210). The fact that the detective and the officer later learned that they were mistaken about defendant's identity, in our view, is of no legal

consequence (see *People v Nimmons,* 60 AD2d 129). ¶ We are also convinced that after defendant refused to remove his hands from his pockets, Detective Norrito acted reasonably when he drew his weapon, placed his hand on defendant's pocket, and, when he felt a gun, removed it from that pocket. The detective and Officer Carter encountered a person who they reasonably suspected as being the perpetrator of a burglary and assault; the detective reasonably feared for his safety (cf. *People v Sanchez,* 38 NY2d 72, 75). As aptly noted by Judge Wachtler in *People v Benjamin* (51 NY2d 267, 271) "[i]t would, indeed, be absurd to suggest that a police officer has to await the glint of steel before he can act to preserve his safety" (see, also, *Terry v Ohio,* 392 US 1, 33 [Harland, J., concurring]). Considering the totality of the circumstances, a sufficient basis existed to justify the limited intrusion which disclosed the presence of a loaded weapon (cf. *People v Russ,* 61 NY2d 693). Mollen, P. J., Titone, O'Connor and Niehoff, JJ., concur.