OPINION OF THE COURT
Guy J. Mangano, Jr., J.
The defendant is charged with criminal possession of a weapon in the second degree (Penal Law § 265.03), criminal possession of a weapon in the third degree (Penal Law § 265.02) and criminal possession of a weapon in the fourth degree (Penal Law § 265.01). A Dunaway/Mapp/Huntley hearing was ordered *85 and held. The People called one witness: New York City Police Officer Edwin Galan.
Findings of Fact
On June 27, 2002, New York City Police Officer Edwin Galan, assigned to the Brooklyn North Target Offender Program,[1] was looking for a parole absconder, Jynarry Brown. The officer was provided with a parole mugshot profile which contained Jynarry Brown’s photograph and address of 24 Monument Walk, Brooklyn. The profile also indicated that Mr. Brown is 5 feet 6 inches in height, weighs 145 pounds, and was born on November 15, 1978, making him 23 years old on the date of the incident. Moreover, Officer Galan testified that he saw Jynarry Brown from a distance of 10 to 15 feet on a prior occasion as Mr. Brown was in the hallway of a parole office. Armed with the foregoing information, the officer proceeded in an unmarked police van with his partner, Sergeant Zepherin, to the vicinity of Mr. Brown’s address. At approximately 11:28 p.m., the police van was near 78 Monument Walk and Officer Galan observed two males walking toward the vehicle approximately 25 feet away.[2] 3Officer Galan exited the van and walked to the men. According to the officer, one of the individuals, defendant herein, was a black male, approximately 5 feet 10 inches in height, over 25 years of age, with dreadlocks and a bandana covering his head, and fit the “basic description” of Jynarry Brown.[3] Officer Galan approached, identified himself as a police officer and asked defendant if he was on parole.[4] *Defendant responded in the affirmative. Officer Galan then asked defendant for the name of his parole officer and the time of his curfew. Defendant could not provide satisfactory answers to these questions and appeared nervous. Moreover, Officer Galan noticed a bulge on the right side of defendant’s waist and furtive hand movements toward his waist. The officer leaned forward, touched *86 the bulge and recognized it to be a gun. A loaded 9 millimeter semiautomatic pistol was subsequently recovered from defendant’s waist. Without being questioned, defendant stated to the officer that he had been shot and feared for his safety.
Conclusions of Law
Dunaway and Mapp Issues
In enforcing the constitutionally protected right to be left alone, the level of permissible intrusion by law enforcement officers during street encounters with private citizens is governed by the four-tier analysis as set forth in People v De Bour (40 NY2d 210). The lowest level of intrusion in approaching an individual to request information is permitted where there exists some objective credible reason for the interference not necessarily indicative of criminality (see id.; see also People v Hollman, 79 NY2d 181; People v Wells, 226 AD2d 406). The next level of intrusion, the common-law right to inquire, is allowable when the police have a “founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure” (People v De Bour, 40 NY2d 210, 223, supra). Third, a police officer may pursue, stop and detain a person when a reasonable suspicion exists that such person has committed, is committing or is about to commit a crime (see id.; see also CPL 140.50; People v Martinez, 80 NY2d 444; People v Hollman, 79 NY2d 181, supra; People v Leung, 68 NY2d 734). Finally, the fourth level of intrusion permits the arrest and custody of a person where the police have probable cause to believe that the person has committed a crime (see People v De Bour, 40 NY2d 210, supra; People v Hollman, 79 NY2d 181, supra; see also CPL 140.10; People v Brown, 256 AD2d 414).
Because the officer’s questions in the instant matter (Are you on parole?, What is your parole officer’s name?, and What time is your curfew?) were accusatory in nature and centered on the “possible criminality” of defendant, the encounter was clearly a level two common-law inquiry which requires a founded suspicion that criminality is afoot (see People v Hollman, 79 NY2d 181, supra). Thus, the validity of the stop turns upon the reasonableness of the officer’s belief that defendant was the suspected parole absconder.
The record reveals that Officer Calan approached defendant because he matched the “basic description” of a parole ab *87 sconder, Jynarry Brown. Officer Galan never asked defendant for his name or if he was Jynarry Brown, and there is no testimony to support any finding that the officer believed defendant to be the sought after parole absconder. Further, a review of the photographs of Mr. Brown and defendant (People’s 1 and 2 in evidence, respectively) evinces that the only common characteristic is that both individuals are black males. Mr. Brown is patently younger in appearance with a tight cornrow hair style, as opposed to defendant who is almost 10 years older with lengthy uncropped dreadlocks. Their respective facial features (eyes, ears, nose and mouth) are also dissimilar. Moreover, Mr. Brown is 5 feet 6 inches in height and weighs 145 pounds whereas defendant is 5 feet 10 inches tall and weighs 180 pounds.[5] The foregoing physical disparity between the two men, coupled with the fact that Officer Galan had seen Jynarry Brown on a prior occasion, should have given the officer pause to believe that defendant was not Jynarry Brown and therefore no “founded suspicion” that defendant was involved in any criminal activity (see People v De Bour, 40 NY2d 210, 223, supra; People v Hollman, 79 NY2d 181, supra).
A different result would be warranted if defendant resembled Mr. Brown. In such case, the officer would have had the right to approach defendant and request information (see People v Bethea, 239 AD2d 510). Based upon the location of the encounter (near the parole absconder’s last known address) and the evasive responses provided by the defendant, coupled with his nervous behavior and furtive hand movement to his waist, the officer would have a reasonable suspicion that defendant was engaged in criminal conduct, thus supporting a level three stop (see e.g. People v Smith, 292 AD2d 280, lv denied 98 NY2d 681; People v Schollin, 255 AD2d 465, lv denied 93 NY2d 878; People v Cordero, 140 AD2d 367, lv denied 72 NY2d 857). The circumstances would have ripened into probable cause to arrest once the officer felt the butt of a gun (see People v Smith, 182 AD2d 786, lv denied 80 NY2d 910).
In reaching the conclusion, however, that the police were without authority to stop and question defendant in the accusatory manner described above, the court is guided by the settled law that a police officer may effectuate a valid level three stop of an individual who bears a strong resemblance to a known suspect being sought in connection with a crime (see People v Reid, 173 AD2d 870, lv denied 78 NY2d 972; see also *88 People v Simpson, 2002 NY Slip Op 50112[U] [Sup Ct, Queens County, Feb. 8, 2002]). Similarly, the court notes that the police may stop and detain a person who resembles a photograph of a suspect or a wanted poster (see People v Bethea, 239 AD2d 510, lv denied 90 NY2d 902; People v Jacob, 202 AD2d 444, lv denied 83 NY2d 873; People v Wright, 100 AD2d 523). In these level three encounters, however, the physical resemblance is present with other indicia of criminality such as flight, furtive behavior and/or being in the proximity of a recently committed crime (see e.g. People v Smith, 220 AD2d 219, lv denied 87 NY2d 1025 [police had common-law right to inquire based on defendant’s close resemblance to suspect in the lobby building where a drug sale had reportedly occurred two or three minutes earlier which escalated to reasonable suspicion based upon defendant’s flight]). At bar, there is absolutely no resemblance between defendant and a known parole absconder other than race and sex, and there is no indicia of any criminal conduct.
In view of the foregoing, the physical evidence is suppressed.
Huntley Issue
Because the statement defendant allegedly made after his arrest was premised on an illegal stop, it must also be suppressed (see Dunaway v New York, 442 US 200).

. According to Officer Galan, the Brooklyn North Target Offender Program is a joint task force with the New York State Division of Parole.

. The apartment building along Monument Walk is a New York City housing development and it was the officer’s testimony that 78 Monument Walk is “within walking distance” to 24 Monument Walk. However, there was no testimony that Officer Galan went to Jynarry Brown’s address or waited outside the building for Mr. Brown to return home.

. The mugshot pedigree information for defendant indicates that he is 5 feet 10 inches tall, 180 pounds, and was bom on August 31, 1969, making him almost 33 years old on the date of his arrest.

. According to Officer Galan, defendant’s companion was not stopped or questioned.

. At the hearing, Officer Galan testified that he was 5 feet 8 inches tall and weighed approximately 180 pounds.