[757 NYS2d 259]

In the Matter of Steven McC., a Person Alleged to be a Juvenile Delinquent, Appellant.

First Department, March 25, 2003

**APPEARANCES OF COUNSEL**

*Amy Hausknecht* of counsel (*Rita Shapiro* on the brief; *Monica Drinane, The Legal Aid Society, Juvenile Rights Division,* attorney), for appellant.

*Ellen Ravitch* of counsel (*Stephen J. McGrath* on the brief; *Michael A. Cardozo, Corporation Counsel* of New York City, attorney), for Presentment Agency.

## OPINION OF THE COURT

SULLIVAN, J.

The issue on this appeal from appellant's adjudication as a juvenile delinquent for having committed an act which, if committed by an adult, would have constituted criminal possession of a weapon in the third degree, is whether the police officers who pursued appellant had a reasonable suspicion of criminal activity to justify the chase during which appellant discarded the gun and magazine that are the subject of the underlying charge.

The following facts were adduced at the suppression hearing. On February 26, 2001, at approximately 10:05 P.M., Detective McSherry, Sergeant McCooey and Police Officer Finlay, assigned to anticrime patrol in an unmarked Chevrolet Blazer and traveling northbound on Valentine Avenue in the Bronx, were stopped at a red light at the intersection of Valentine Avenue and 184th Street, a high crime area. The Chevrolet Blazer was the first in line at the red light. Detective McSherry and Sergeant McCooey, both in plain clothes, sat in the front of the vehicle. Sergeant McCooey was the driver. Officer Finlay, in uniform, was a passenger in the rear of the vehicle.

While they were stopped, Detective McSherry observed three young males, one of whom was appellant, crossing the street in front of their vehicle. McSherry testified that as the trio passed in front of the Blazer, they looked inside. One of the three "did a double take" and all of them "appeared to become startled." Although the three males stayed together, their pace quickened. When they reached the other side of the street, walking southbound on the sidewalk, appellant separated from the group and, "walk[ing] closer to the building than the other two" "made a gesture like he's putting something down by the building, by a doorway in the building which would lead to an alley." As the detective explained, "He made a motion with his hand which looked to me he was casting something away, putting something down." Appellant then joined the other two young men, who were walking southbound on Valentine Avenue.

The police vehicle then made a U-turn and pulled up alongside the three boys. Detective McSherry and Officer Finlay rolled down their windows "to [gauge] their reaction."

Appellant "turned, looked at [their] car, [l]ooked right at [McSherry]," "panicked" and "took off running southbound on Valentine." The other two young men remained standing where they were.

With that, Officer Finlay exited the police vehicle and gave chase while Sergeant McCooey and Detective McSherry drove alongside appellant. After running "a couple of feet, [appellant] dropped a black metal object to the ground." After another 10 or 15 feet, appellant threw a silver object, which appeared to be a firearm, to the ground. When appellant continued running, Detective McSherry shouted, "stop police." Appellant stopped and "put his hands up," whereupon McSherry exited the vehicle and apprehended him. Sergeant McCooey handed Detective McSherry a 9 millimeter silver semiautomatic handgun that he had recovered from the sidewalk within 10 feet or so of where appellant stopped. Officer Finlay gave McSherry a black 9 millimeter magazine loaded with 22 rounds and two loose rounds. One of the officers checked the alleyway where appellant had earlier stopped, but found nothing.

After reviewing written summations, Family Court denied suppression, crediting the testimony of the testifying police officers and finding that their actions justified a founded suspicion of possible criminal activity that gave rise to a right of inquiry. Before such right could be exercised, the court held, the officers' suspicion was heightened by appellant's flight, thus justifying their pursuit, which led to the recovery of the gun, magazine and bullets. After a fact-finding hearing, Family Court found that appellant had committed the act of criminal possession of a weapon in the third degree and adjudicated him a juvenile delinquent, placing him on probation for a period of 12 months. Appellant appeals, limiting his contentions to the suppression issue. We affirm.

In *People v De Bour* (40 NY2d 210, 223 [1976]), the Court of Appeals set forth "a four-tiered method for evaluating the propriety of encounters initiated by police officers in their criminal law enforcement capacity" (*People v Hollman*, 79 NY2d 181, 184 [1992]), listing the various steps of justifiable intrusion: (a) an approach to request information based on some objective credible reason, not necessarily indicative of criminality, for the interference; (b) the common-law right to inquire (short of forcible seizure), based on a founded suspicion that criminal activity is afoot; (c) a forcible stop and detention (and limited pat-down/frisk), based on a reasonable suspicion that a particular person has committed, is committing or is about to

commit a crime; and (d) an arrest, based on probable cause to believe the person committed a crime.

It is clear that a police pursuit of a person does not constitute a seizure under the Fourth Amendment and thus any items discarded by the person being pursued during a chase are not subject to suppression as the fruit of an illegal search (*California v Hodari D.*, 499 US 621 [1991]). More recently, in *Illinois v Wardlow* (528 US 119 [2000]), the Supreme Court found that an individual's presence next to a building in a high crime area, holding an opaque bag, together with his unprovoked flight on seeing the police, who were converging on the area as part of a drug investigation, did, in fact, furnish a reasonable suspicion that crime was afoot and therefore provided justification to chase him. In so finding, the Court recognized that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such" (*id.* at 124). Further, the Court held, "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior" (*id.* at 125). While the Court recognized that a refusal to cooperate alone does not justify a detention or seizure, it noted that "unprovoked flight is simply not a mere refusal to cooperate"; rather, it is the antithesis of "going about one's business" (*id.*).

New York, however, continues to follow the rule set forth in *People v Howard* (50 NY2d 583, 592 [1980], *cert denied* 449 US 1023 [1980]) that a police pursuit constitutes a "limited detention" that requires reasonable suspicion as justification therefor (*People v Holmes*, 181 AD2d 27 [1992], *affd* 81 NY2d 1056 [1993]). As the Court of Appeals emphasized in *Holmes*, "Flight alone * * * or even in conjunction with equivocal circumstances that might justify a police request for information [citations omitted], is insufficient to justify pursuit because an individual has a right 'to be let alone' and refuse to respond to police inquiry [citation omitted]" (*id.* at 1058). The Court did, however, hold that "[f]light, combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, could provide the predicate necessary to justify pursuit" (*id.*).

In *People v Martinez* (80 NY2d 444 [1992]), the Court of Appeals specifically addressed "the factual basis necessary to justify police officers' pursuit and detention of a fleeing individual" (*id.* at 445-446). The Court stated that "the police may pursue a fleeing defendant if they have a reasonable suspicion

that defendant has committed or is about to commit a crime" (*id* at 446.). Reasonable suspicion, the Court noted, means that "quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (*id.* at 448, quoting *People v Cantor*, 36 NY2d 106,112-113 [1975]). Significantly, the Court held, a "defendant's flight may be considered in conjunction with other attendant circumstances" indicating that crime is afoot (*People v Martinez* at 448).

In *People v Pines* (99 NY2d 525, 526 [2002], *affg* 281 AD2d 311 [2001]), police officers, on patrol in an unmarked car in a drug prone area, observed the defendant "looking around nervously" as he walked with his companion. Suspecting that a drug transaction was imminent, the officers followed the two men. When the defendant first saw the car his eyes "bulged out" and, while he continued walking, his gaze remained fixed on the police vehicle (*id.*). As it approached, the defendant placed his right arm against the side of his jacket and "bunched it up" by reaching his hand underneath in a cupping motion, reminding the testifying officer of how he himself would sometimes adjust a gun under his jacket (*id.*). As the police vehicle drew closer, the defendant maneuvered himself in such a way as to shield his right side from view until, when the police vehicle was parallel to the two men, the defendant turned abruptly and began walking in the opposite direction, abandoning his companion and still cradling the side of his jacket. When the police officers called out to the defendant, asking him if they could talk to him for a minute, he fled. As the officers gave chase, one spotted a gun in the defendant's hand and then observed him discard it in a receptacle as he ran.

The Court of Appeals affirmed this Court's determination that the officers' initial observations gave rise to more than just the right to approach the defendant to request information, but rather to a founded suspicion that criminal activity was afoot that justified a common-law right of inquiry under *People v De Bour* (40 NY2d 210, *supra*). This Court held that as a result of the "defendant's flight upon the approach of the officers, and the additional suspicion engendered by it, the evidence met the level of reasonable suspicion, justifying pursuit" and the officers' stop and detention of the defendant (281 AD2d at 312).

Here, as in *Pines*, when appellant first noticed the police officers on patrol in a high crime area, he appeared startled; thereafter, his pace quickened and he separated himself from his

companions to walk over to a building near an alley where he made a motion with his hand as if he were discarding something. When the police vehicle pulled alongside appellant, who had rejoined his companions, he looked at the officers, panicked and fled, leaving his companions behind. Appellant's initial conduct, in acting startled upon observing the police officers, the quickened pace and subsequent separation from his companions, apparently to discard something, gave rise to more than a mere objective credible reason to request information. It afforded a founded suspicion that criminal activity was afoot, giving rise to the common-law right of inquiry. Appellant's subsequent flight on the officers' approach and the additional suspicion it engendered gave rise to reasonable suspicion and justified the officers' pursuit of appellant and their stop and detention of him.

Thus, the recovery of the gun and magazine and bullets discarded during the police pursuit of appellant were not the product of an illegal seizure and were properly received as evidence against him.

Accordingly, the order of disposition of the Family Court, Bronx County (Clark Richardson, J.), entered on or about July 31, 2001, which adjudicated appellant a juvenile delinquent upon a fact-finding determination that he committed acts which, if committed by an adult, would constitute the crime of criminal possession of a weapon in the third degree, and placed him on probation for a period of 12 months, should be affirmed, without costs.

ANDRIAS, J.P., ROSENBERGER, FRIEDMAN and GONZALEZ, JJ., concur.

Order of disposition, Family Court, Bronx County, entered on or about July 31, 2001, affirmed, without costs.