■ The People of the State of New York, Appellant, v Keith Stephens, Respondent. [851 NYS2d 136]—

Order, Supreme Court, New York County (William A. Wetzel, J.), entered on or about October 10, 2006, which granted defendant's motion to suppress physical evidence, unanimously reversed, on the law, the motion denied, the indictment reinstated and the matter remanded for further proceedings.

On the evening of February 28, 2006, the arresting officer, Officer John Hoffman, was patrolling with two other plainclothes anticrime officers in an unmarked police car. At about 10:00 P.M. Officer Hoffman made a very brief observation of defendant and another man walking four to five feet behind a third man. Defendant was wearing a puffy, waist-length winter coat, and as defendant walked, his right hand was motionless at the right side of his waistband area while his left hand was moving. According to Officer Hoffman, defendant, apparently noticing the officers' car, looked at the car and became "startled," looking "straight ahead as if he was very nervous or he saw like a ghost." While continuing to "look straight ahead" as he walked, defendant "still ha[d] his hand on his right side." As Officer Hoffman stopped the car, the other officers got out and approached defendant, who fled. Officer Hoffman, who continued to follow defendant with the car, noticed that defendant ran with his arm clutched on his right side. After a brief chase, the police apprehended defendant and recovered a gun that defendant had thrown under a parked car as he was being chased, as well as a quantity of narcotics.

Defendant was charged with criminal possession of a weapon in the second and third degrees, and criminal possession of a controlled substance in the third degree. Defendant moved, among other things, to suppress evidence that the police had recovered upon his arrest. A *Mapp* hearing was ordered.

At the hearing, Officer Hoffman, a nine-year veteran of the New York City Police Department, testified that he was initially alerted by defendant's actions because there had been "robberies in the area with male blacks robbing [people] at gunpoint" and that "it looked very odd[,] based on [his] experience[,] that two individuals would be so close to another individual walking in that area." Moreover, according to Officer Hoffman, who had been trained to identify a person carrying a firearm, people carrying guns walked in a noticeably different manner.* Thus, Officer Hoffman was further alerted by defendant's actions

---

* In this regard, Officer Hoffman testified: "[t]hey would walk heavy on one side. They would actually motion in a nervous reaction, motion their side where there could possibly be a weapon. If they walk up and down a curb they will clutch their weapons. Most criminals don't carry a holster. It is in their

because defendant was walking in a manner consistent with the likelihood that he was carrying a firearm. The officer then testified that he could see "no reason why someone runs . . . with one hand swinging, the other hand on his person unless he is holding something."

The hearing court found Officer Hoffman to be "completely credible" and "scrupulously honest." Nonetheless, the court concluded that the defendant's motion to suppress must be granted because his conduct, including the subsequent flight, did not give rise to a reasonable suspicion that he had committed or was about to commit a crime. The court found that "[b]roken down in a frame-by-frame analysis, the defendant's behavior [was] innocuous."

The court held that, even assuming the defendant knew that the men approaching him were police officers and then fled, that behavior still would not have provided the necessary legal predicate to chase him, as flight alone was insufficient to justify pursuit. The court then found there was nothing remarkable about the defendant walking with another man, behind a third man, at 10:00 P.M. on a city street. The court also found that the defendant's act in walking with one hand held to his waistband area while allowing the other hand to swing freely was not sufficient to justify a stop of the defendant. It also failed to comport with Officer Hoffman's own training standards, as it did not fit with the signs that he had described as part of the police training on how to identify people carrying concealed weapons. Finally, the court noted that it gave no consideration to Officer Hoffman's testimony that he had received reports of male blacks robbing people at gunpoint near the street that Officer Hoffman spotted defendant.

For the reasons set forth below we disagree with the hearing court's use of a narrowly focused frame-by-frame analysis and find that the totality of the circumstances gave the police a reasonable suspicion to believe that the defendant had committed or was involved in a crime.

The law is well settled that any inquiry into the propriety of police conduct must weigh the degree of intrusion entailed against the precipitating and attending circumstances out of which the encounter arose (*People v Salaman*, 71 NY2d 869, 870 [1988]; *People v De Bour*, 40 NY2d 210, 223 [1976]). Thus, the court must concentrate on whether the conduct of the police was reasonable at the time in view of the totality of the circum-

pants or waistband. See their overall body movement to see if they were walking with a possible weapon."

stances (*People v Batista*, 88 NY2d 650, 653 [1996]; *People v Lomiller*, 30 AD3d 276, 277 [2006], *lv dismissed* 7 NY3d 850 [2006]). In determining whether a police officer has reasonable suspicion to justify his actions, "the emphasis should not be narrowly focused on . . . any . . . single factor, but on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer" (*People v Graham*, 211 AD2d 55, 58 [1995], *lv denied* 86 NY2d 795 [1995] [citation and internal quotation marks omitted]).

Officer Hoffman saw defendant at 10:00 P.M., in an area where there had been a number of gunpoint robberies. Defendant was following another man while clutching his waistband and keeping his right arm tight against his body as he walked. Moreover, the defendant looked startled when he saw the police. Officer Hoffman suspected that defendant was carrying a weapon and his suspicion was immediately heightened when defendant and his companion ran away from the police before they could ask any questions. These actions taken together, justified the officers' pursuit of the defendant, as well as the recovery of the gun and narcotics (*People v Pines*, 281 AD2d 311 [2001], *affd* 99 NY2d 525 [2002] [where defendant's ensuing flight escalated the encounter and provided reasonable suspicion of criminality justifying pursuit]; *Matter of Steven McC.*, 304 AD2d 68 [2003], *lv denied* 100 NY2d 511 [2003] [where the appellant saw the police car, quickened his pace and separated himself from his companions to walk over to a building near an alley and discard something, and the Court found that these actions gave rise to a founded suspicion, which ripened into reasonable suspicion upon the appellant's flight when the police approached]). Therefore, the weapon defendant discarded in the course of his flight, and the subsequent contraband found on his person, were lawfully obtained and the motion to suppress was improperly granted. Concur—Friedman, J.P., Marlow, Nardelli and Catterson, JJ.