# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**254**
**KA 11-01328**
PRESENT: SMITH, J.P., FAHEY, LINDLEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,

               V                          MEMORANDUM AND ORDER

JAVIER BACHILLER, DEFENDANT-RESPONDENT.

---

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (MICHAEL A. KASMAREK OF COUNSEL), FOR APPELLANT.

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (CHRISTINE M. COOK OF COUNSEL), FOR DEFENDANT-RESPONDENT.

---

Appeal from an order of the Onondaga County Court (William D. Walsh, J.), dated February 15, 2011. The order granted the motion of defendant to suppress certain physical evidence.

It is hereby ORDERED that the order so appealed from is unanimously reversed on the law, that part of the omnibus motion to suppress physical evidence is denied, and the matter is remitted to Onondaga County Court for further proceedings on the indictment.

Memorandum: The People appeal from an order granting that part of defendant's omnibus motion to suppress physical evidence, i.e., a handgun. We agree with the People that reversal is required.

The testimony at the suppression hearing established that an officer responded to a report of a possible stabbing in the City of Syracuse and observed approximately 100 people in the street leaving a house party. In addition to some "minor disturbances," there was also "yelling." The area in which the reported stabbing occurred had been the scene of numerous violent crimes and a recent homicide. After the responding officer exited his patrol car, his attention was drawn to a heated argument between defendant and another man. The other man turned and ran through adjacent backyards, and defendant chased him.

As defendant correctly concedes, the report of a possible stabbing coupled with the responding officer's observations at the scene furnished the police with the requisite "founded suspicion that criminal activity [was] afoot" sufficient to justify the common-law right of inquiry (*People v Moore*, 6 NY3d 496, 498; *see People v De Bour*, 40 NY2d 210, 223). "This right authorized the police to ask questions of defendant—and to follow defendant while attempting to engage him—but not to seize him in order to do so" (*Moore*, 6 NY3d at 500).

The issue before us thus is whether the police thereafter obtained the requisite reasonable suspicion to justify their pursuit of defendant (*see generally People v Sierra*, 83 NY2d 928, 929; *People v Martinez*, 80 NY2d 444, 446; *People v Riddick*, 70 AD3d 1421, 1422, *lv denied* 14 NY3d 844).  "Flight alone, . . . or even in conjunction with equivocal circumstances that might justify a police request for information . . . , is insufficient to justify pursuit because an individual has a right 'to be let alone' and refuse to respond to police inquiry" (*People v Holmes*, 81 NY2d 1056, 1058; *see Riddick*, 70 AD3d at 1422).  However, "a defendant's flight in response to an approach by the police, *combined with other specific circumstances indicating that the suspect may be engaged in criminal activity*, may give rise to reasonable suspicion" (*Sierra*, 83 NY2d at 929 [emphasis added]; *see Holmes*, 81 NY2d at 1058; *Riddick*, 70 AD3d at 1422).  In determining whether a pursuit was justified by reasonable suspicion, " 'the emphasis should not be narrowly focused on . . . any . . . single factor, but [rather] on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer' " (*People v Stephens*, 47 AD3d 586, 589, *lv denied* 10 NY3d 940).

Here, the responding officer and two other officers patrolled the area searching for defendant and the other man in order to investigate whether they were involved in the alleged stabbing or in other criminal activity.  The initial responding officer drove around the surrounding area until he saw defendant.  When defendant observed the patrol car, he "immediately turned and began to walk in a brisk manner . . . in the opposite direction [from which] he was heading."  The responding officer then radioed the two other officers and notified them of defendant's location and direction of travel.  Shortly thereafter, the two officers observed defendant moving toward them at a fast pace.  When defendant saw the officers, he stopped, turned, and ran in the opposite direction.  While defendant was running, the two officers observed him grab and hold onto an object in his waistband area with his left hand.  Both officers testified that they believed that defendant was grabbing a gun concealed in his waistband.  One of the officers yelled to the other that he believed defendant had a gun, and both officers drew their service weapons and pursued defendant as he fled.  Defendant did not respond to the officers' repeated requests to stop and show his hands.  As defendant was running, he discarded a handgun, which the police later recovered.

We agree with the People that defendant's flight from the police, coupled with his actions in grabbing an object at his waistband, gave rise to a reasonable suspicion sufficient to justify their pursuit of defendant (*see Moore*, 6 NY3d at 500-501; *People v Zeigler*, 61 AD3d 1398, 1398-1399, *lv denied* 13 NY3d 864; *see also People v Pines*, 99 NY2d 525; *People v Crisler*, 81 AD3d 1308, 1309, *lv denied* 17 NY3d 793; *Stephens*, 47 AD3d at 587-589).  Although defendant contends that the police did not know what he was holding in his left hand, "[i]t is quite apparent to an experienced police officer, and indeed it may almost be considered common knowledge, that a handgun is often carried in the waistband" (*People v Benjamin*, 51 NY2d 267, 271; *see Zeigler*, 61 AD3d at 1399; *see also Holmes*, 81 NY2d at 1058).  Courts have long

held that the police need not "await the glint of steel" before acting to preserve their safety (*Benjamin*, 51 NY2d at 271; *see People v Stokes*, 262 AD2d 975, 976, *lv denied* 93 NY2d 1028).  Notably, defendant was not simply reaching in the direction of his waistband. Rather, the two officers as well as the initial responding officer, who was also pursuing defendant, testified that defendant was clutching an object that appeared to be a gun at his waistband, and the court "fully credit[ed]" their testimony.

Thus, under the circumstances presented here, we conclude that the court erred in granting that part of defendant's omnibus motion seeking suppression of the physical evidence seized by the police.

Entered:  March 16, 2012                    Frances E. Cafarell
                                            Clerk of the Court