# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**420**

**KA 14-01881**

PRESENT: WHALEN, P.J., LINDLEY, NEMOYER, CURRAN, AND TROUTMAN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                        MEMORANDUM AND ORDER

KALIL T. WALKER, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JAMES A. HOBBS OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (KELLY CHRISTINE WOLFORD OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered June 25, 2014. The judgment convicted defendant, upon his plea of guilty, of criminal possession of a weapon in the second degree and assault in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon a plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and assault in the second degree (§ 120.05 [3]), defendant contends that Supreme Court erred in refusing to suppress evidence resulting from an unlawful pursuit. We reject that contention.

While patrolling in a high-crime area known for gang activity, drugs and weapons, officers effectuated a traffic stop of a vehicle in which defendant was a passenger. Defendant immediately exited the vehicle, positioning his body so that his back was to the officers and they could not observe his right hand. When directed to return to the vehicle, defendant refused and, instead, turned to face the police officers. At that moment, the officers observed that defendant had his right hand at his waistband. The officers "recognized that as a possible threat" because their training and experiences had taught them that individuals "keep their weapons tucked inside their waistband right where [defendant] was reaching." Notably, there was no innocuous explanation for such hand positioning because defendant's pants were not "sagging or being anywhere other than at his waist." One of the officers drew his weapon, at which point defendant immediately fled. During the ensuing chase, the officers saw defendant drop a "dark heavy object" that was later recovered and identified as a firearm.

Contrary to defendant's contention, the officers' conduct "was justified in its inception and at every subsequent stage of the encounter" (*People v Nicodemus*, 247 AD2d 833, 835, *lv denied* 92 NY2d 858). "[I]t is well settled that the police may pursue a fleeing defendant if they have a reasonable suspicion that defendant has committed or is about to commit a crime . . . While flight alone is insufficient to justify pursuit, defendant's flight in response to an approach by the police, *combined with other specific circumstances indicating that the suspect may be engaged in criminal activity*, may give rise to reasonable suspicion, the necessary predicate for police pursuit" (*People v Rainey*, 110 AD3d 1464, 1465 [internal quotation marks omitted]; *see People v Sierra*, 83 NY2d 928, 929). "In determining whether a pursuit was justified by reasonable suspicion, the emphasis should not be narrowly focused on . . . any . . . single factor, but [rather should be based] on an evaluation of the totality of circumstances, which takes into account the realities of everyday life unfolding before a trained officer" (*People v Bachiller*, 93 AD3d 1196, 1197, *lv dismissed* 19 NY3d 861 [internal quotation marks omitted]).

Here, we conclude that defendant's positioning and his refusal to comply with the officer's request to return to the vehicle, while not alone indicative of criminal behavior, could be "considered in conjunction with other attendant circumstances" to establish the requisite reasonable suspicion of criminal activity (*People v Martinez*, 80 NY2d 444, 448). In our view, once defendant refused the officer's request to return to the vehicle and turned toward the officers, the officers could "reasonably suspect[] that defendant was armed and posed a threat to their safety because his actions were directed to the area of his waistband, which was concealed from their view" (*People v Fagan*, 98 AD3d 1270, 1271, *lv denied* 20 NY3d 1061, *cert denied* ___ US ___, 134 S Ct 262). The officer who drew his weapon was justified in doing so out of a concern for his own safety (*see People v James*, 272 AD2d 75, 75, *lv denied* 95 NY2d 866, *reconsideration denied* 95 NY2d 965; *People v Wright*, 100 AD2d 523, 525; *see generally People v Benjamin*, 51 NY2d 267, 271). We thus conclude that defendant's flight, "in conjunction with the attendant circumstances, gave rise to the requisite reasonable suspicion justifying police pursuit" (*People v Brown*, 67 AD3d 1439, 1440, *lv denied* 14 NY3d 798; *see Bachiller*, 93 AD3d at 1197-1198; *cf. People v Robbins*, 83 NY2d 928, 930).

Inasmuch as "the pursuit of the defendant was justified, the gun he discarded during the pursuit was not subject to suppression as the product of unlawful police conduct" (*People v Williams*, 120 AD3d 1441, 1442, *lv dismissed* 24 NY3d 1089; *see People v Gayden*, 126 AD3d 1518, 1518-1519, *affd* 28 NY3d 1035; *People v Feliciano*, 140 AD3d 1776, 1777, *lv denied* 28 NY3d 1027). Moreover, for the same reason, defendant's statements to the police are "not subject to suppression as fruit of the poisonous tree" (*Feliciano*, 140 AD3d at 1777; *see People v Sims*,

106 AD3d 1473, 1474, *appeal dismissed* 22 NY3d 992).

Entered:  April 28, 2017                          Frances E. Cafarell
                                                  Clerk of the Court