Nanette Dembitz, J.
This juvenile delinquency proceeding against two 15-year-old boys turns on the construction of the provisions of the Penal Law on criminal trespass. Respondents were charged with acts that would constitute, if committed by adults, the misdemeanor, of criminal trespass, third degree, in that they were found in an upstairs hall of a public school, although they were not pupils in the school and had not been given permission to enter or remain in the building. The allegations of fact as to respondents’ conduct are undisputed.
The Penal Law provides: “ A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property which is fenced or otherwise enclosed in a manner designed to exclude intruders.” (Penal Law, § 140.10, eff. Sept. 1, 1967, as amd.).
Respondents argue that this general provision as to trespass in “ a building ” is inapplicable to public schools because loitering in a school is specifically prohibited by another provision of the Penal Law. The court rejects this contention, as well as respondents’ argument that an order to leave the building is a component of the crime of trespass in a public school. The court concludes, however, that an element of third degree criminal trespass is the individual’s 'actual knowledge of the illegality of his conduct, and that this element has not been proved beyond a reasonable doubt in respondents’ cases. Accordingly, the petition against them must be dismissed.

Effect of An-tiloitermg Provision,

The antiloitering provision penalizes one who ‘ ‘ loiters or remains in or 'about a school ’ ’ without a ‘ ‘ specific, legitimate reason ” or “ written permission ” (Penal Law, § 240.35, subd. 5). Basing themselves on the principle that a specifically applicable law prevails over a general one, respondents argue that a school is excluded from the buildings covered by the trespass statute. Since loitering is categorized merely as a “ violation ” and a youth under 16 can only be charged with an act that would *909 constitute a misdemeanor or felony on the part of an adult, it would follow from respondents ’ argument that a juvenile could not be charged with unlawfully entering or remaining in a school building. (See Matter of Richard K., 35 A D 2d 716 [1st Dept., 1970].)
The rule of the specific prevailing over the general seems inapplicable here, because the offenses of trespass and loitering are significantly different. The term ‘ ‘ knowingly, ’ ’ which is included in the definition of trespass in section 140.10 of the Penal Law is omitted from the definition of loitering in section 240.35 of the Penal Law; and, as will be hereinafter shown, this term requires proof of the individual’s actual knowledge of the illegality of his conduct. This difference marks an important distinction between third degree criminal trespass as applied to a public school, and loitering in a public .school; and it justifies the higher degree of criminality attached to trespass. Further, as a matter of policy there seems no reason to exclude .schools from the higher degree of offense.
The prohibition on loitering in a school is, moreover, an adverse factor for respondents, for it establishes that a school cannot be deemed a public building in the sense that the public may enter at will. (See People v. Johnson, 6 N Y 2d 549, 552 [1959], Cf. People v. Brown, 25 N Y 2d 374, 376 [1969] and Matter of Florette D., 33 A D 2d 1028 [2d Dept., 1970], with respect to buildings open to the public ; also People v. Rewald, 65 Misc 2d 453, 456-457 [County Ct., Cayuga, 1971].) The reference to schools as public buildings in the New York City Administrative Code (§ C26-235.0, subd. a) — a point argued by respondents — is unpersuasive since it establishes a classification only for the purposes of architectural requirements. Thus, the court must reject respondents’ argument that a school is “ open to the public ” for the purpose of the trespass provisions and that an individual’s presence therein constitutes criminal trespass only if he has been individually and specifically directed to leave (see Penal Law, § 140.00, subd. 5).
The final significance of the antiloitering statute is that it establishes that respondents were in the school “ unlawfully ”— “ unlawful ” presence being an element of trespass as defined in section 140.10. The exclusion from juvenile delinquency of offenses less than misdemeanors, such as loitering, is based on the premise that a juvenile should not be embroiled in legal proceedings for an isolated act of minor antisociality. However, acts that violate the criminal law are not clothed with legality because committed by a juvenile. No “ criminal responsibility ” *910 is imposed on juveniles even for acts .that would constitute, on the part of an adult, misdemeanors o.r felonies (see Penal Law, § 30.00); nevertheless, such acts are not thereby rendered ‘ ‘ lawful ”. By the same token, the social policy of refraining from prosecution of a juvenile for conduct constituting a minor offense, is not tantamount to a declaration of its legality. Furthermore, the authoritative impact of the loitering statute upon a juvenile is demonstrated by the fact that its repeated violation would ground a petition against him as a “ person in need of supervision ” under the Family Court Act (see Matter of Bordone v. Allen F., 33 A D 2d 890, 891 [4th Dept., 1969]). In sum, legislative policy restricting .the enforcement against juveniles of statutes defining minor offenses, such as the antiloitering statute, does not establish the legality of the prohibited conduct.

Other Elements of Criminal Trespass

1. Respondents’ attorneys established at the trial that the side-doors of the school in which respondents were found, were unlocked and unattended. They argue that section 140.10 is for this reason inapplicable to .the school because it was not ‘ ‘ fenced or otherwise enclosed ’ ’ as provided in the last clause of the section. The issue is whether this clause modifies the term ‘ ‘ building ’ ’ or only ‘ ‘ real property. ’ ’
In common usage this phrase would only be used in reference to real property. Further, the authoritative Commentary on the Penal Law (written by the director and chief counsel of the drafting commission) makes it clear that the clause only modifies the term “ real property ”. (See McKinney’s Cons. Laws of N. Y., Book 39, pp. 351, 347.) Under respondents’ construction, it should be observed, an entrance even into a private home could not constitute a third degree trespass, if the door happened to be standing open at the time of entrance.
Accordingly, this court respectfully disagrees with the opinion in People v. Wolf (63 Misc 2d 178, 181 [Dist. Ct. Suffolk County, 1970]), indicating that the term “ building ” is modified by the clause as to fencing or enclosure.
2. The issue as to the term ‘1 knowingly ’ ’ in section 140.10 of the Penal Law is whether an element of trespass is .the individual’s actual knowledge of the illegality of his conduct or whether mere consciousness of his conduct (for example, knowledge that he is in fact in a building without permission) is sufficient. Section 15.05 of the Penal Law defining “ knowingly ”, leaves some ambiguity on this question.
The general principle is that ignorance of the law is no excuse and that a person is presumed to know the law. However, this *911 court holds that section 140.10 was intended to carve out an exception to this rule and that the actor’s actual knowledge of the illegality of his presence is an element of the crime of trespass.
The Commentary points out that a person “ who honestly believes that he is licensed or privileged to enter ” is not guilty under the statute and ‘ ‘ that the offense is not one of strict liability.” (p. 347). This narrowing intent seems appropriate since prior to 1967 there was in New York no punishment for trespass except on real property (see section 2036 of former Penal Law). Further, specific “ unlawful intent ” has always been an element of the crime of trespass. (Hewitt v. Newburger, 141 N. Y. 538, 542 [1894].)
The case at bar must be distinguished from United States v. International Minerals & Chem. Corp. (402 U. S. 39 ; U. S. L. W. 4650). There the Supreme Court considered a regulation governing the transportation of dangerous liquids and a statute penalizing whoever “ ‘ knowingly violates any such regulation. ’ ” The issue between the majority and dissenters was whether the Government was only required to prove the shipper’s knowledge of the fact that he was transporting a dangerous liquid or whether an additional element of the crime was his knowledge of the regulation he was violating. The majority held that the statute did not intend “ an exception to the general rule that ignorance of the law is no excuse ” (39 U. S. L. W., at p. 4651) and that no proof that the shipper actually knew of the regulation was required.
This construction of ,the statute was based on its legislative history and on the view that regulation of dangerous substances was so likely that “ anyone * * * dealing with them must be presumed to be aware of the regulation ” (39 U. S. L. W., at p. 4652). In contrast, it does not appear that such a rule of “ absolute liability”, as the dissenters called it (U. S. L. W., at p. 4653), is appropriate to the trespass statute.
The trespass statute applies merely to “unlawful” presence regardless of any unlawful purpose or act or danger to the public; it would apply even to a passerby who entered a school building merely out of curiosity about the interior. Further, absent a requirement of the defendant’s or respondent’s actual knowledge of the illegality of his presence, the trespass statute seems unfairly and unconstitutionally vague, since the term ‘ ‘ unlawfully ’ ’ covers the whole area of statutory and decisional law. (Cf. Boyce Motor Lines v. United States, 342 U. S. 337, 342 [1952] ; Ahmed v. Rockefeller, 308 F. Supp. 935, 937 [S. D. N. Y. 1970].)
*912 The requirement of actual knowledge does not of course mean that the individual must admit knowledge, but only that facts must be proved from which it can be inferred. Here, however, petitioner did not prove that there were antiloitering signs posted in the school or that respondents were warned to stay out of or leave the school — evidence from which it might be inferred that respondents knew their presence in the school was illegal. While there may be general knowledge in the community of the illegality of loitering in a .school, this factual supposition is insufficient to prove beyond a reasonable doubt respondents’ individual knowledge.
Petitioner’s counsel suggested that a juvenile unlawfully in the school might well have committed an illegal act there which would be undiscovered until after he exited and could no longer be apprehended. He points out that a strict construction of the trespass statute might preclude his arrest while he was within or leaving the school. While this point has a practical cogency, its adoption would in effect sanction arrest on suspicion.
The petitions against respondents alleged, in addition to trespass, sexual abuse of a teacher. The petitioner-teacher testified that Luis rather than Armando committed the acts constituting sexual abuse; and this allegation was dismissed with respect to Armando at the close of petitioner’s testimony for lack of prima facie case. Considering the entire evidence respecting Luis, however, the allegation as to sexual abuse was not proved beyond a reasonable doubt, and indeed tended strongly to show Armando’s guilt (an example, apparently, of error in eyewitness identification in a .sudden and tense incident: Of. Wall, EyeWitness Identification in Criminal Cases [1965] c. 1).
The petitions are dismissed with respect to both the allegations of trespass and of sexual abuse against both respondents.