THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAYMOND HYTER, Respondent.—Appeal by the People from an order of the Supreme Court, Richmond County, entered October 25, 1977, which, after a hearing, granted defendant's motion to suppress a quantity of marihuana seized in

his apartment. Order reversed, on the law, and motion to suppress denied. The facts are not in dispute. On June 21, 1977, at about 8:00 A.M., Patrolman Donald Olson arrived at 52 Wayne Terrace in Staten Island, spoke with a Mrs. Mabra, her son Alan and two or three other people, and was told that a short while before "Raymond Hyter" had "threaten[ed]" them "with a revolver." Olson was also furnished with a description of Hyter and advised that he lived across the street at 53 Wayne Terrace. Olson noticed lacerations of "recent origin" about the head, ear and nose of Alan Mabra. Olson proceeded to defendant's house, but received no response at the front door. He walked to the rear courtyard and, from a distance of 20 to 30 feet, observed defendant about five feet away from the back entrance to his house, which entrance leads to the kitchen area. He called out to defendant, who "turned" and entered the house. Olson followed defendant inside (the door to the kitchen was open), confirmed he was "Raymond Hyter", advised him he was under arrest for "menacing with a gun and assault" and placed him in handcuffs. On the kitchen table, a few feet away from where he was standing, Olson saw and seized a quart jar of what appeared to be marihuana seeds, a quantity of loose marihuana, three cigarettes, a scale and a clip containing six .22 caliber bullets. Criminal Term granted defendant's motion to suppress on the ground that the arrest was unlawful because there was no verification of the information given by the witnesses, nor proof of the "informer's" reliability. It was error for Criminal Term to apply the same standards which should be applied to paid or anonymous informants, to ordinary citizens who had given their names to the police and who had just witnessed—and indeed were the victims of—a crime. The arresting officer had ample reason to credit the information given him since Mrs. Mabra and her son risked prosecution if their report was fabricated (see Penal Law, § 240.50; *People v Flannagan,* 56 AD2d 289; see, also, *People v Hicks,* 38 NY2d 90, 94). Surely, where an identifiable private citizen reports that he has just been threatened with a gun, the responding officer cannot be expected to stand by and do nothing. Based upon the information given to him, and in view of his own observation of Alan Mabra's lacerations, Officer Olson had probable cause to arrest defendant for the crimes of criminal possession of a weapon *and* menacing (see Penal Law, § 120.15), and possibly even assault, and defendant on this appeal does not contend otherwise. However, defendant does contend that the arrest was effected in violation of CPL 140.15 (subd 4) and CPL 120.80 (subd 4). The statutory mandate that, before entering premises to make an arrest, a police officer "must give, or make reasonable effort to give, notice of his authority and purpose to an occupant thereof" (CPL 120.80, subd 4), is intended to secure the privacy of one's home or lodging against unannounced intrusions by the police. We do not have a situation here where officers surreptitiously utilized a passkey to enter a person's room *(People v Floyd,* 26 NY2d 558), nor a case of an officer kicking down a door *(People v Frank,* 35 NY2d 874, revg 43 AD2d 691 on the dissenting opn of Mr. Justice SHAPIRO). At bar, the arresting officer did not even open defendant's door. Rather, he followed defendant through the open door after unsuccessfully calling to him outside the house. It would elevate form over substance to suggest, as defendant does, that Olson should have stopped at the threshold and communicated at a distance through the open door. In addition, Olson had a report not only that defendant was armed, but that he had just used the gun for the commission of a crime—menacing (see *People v Green,* 35 NY2d 193, 196). It is pure sophistry to say, as defendant does, that Officer Olson "could have easily thwarted any * * * escape" because of his "clear view of [defendant]

through the open door". However, common sense would dictate that the possibility of a shoot-out was rendered considerably less probable by Olson's walking right up to defendant rather than speaking to him at a distance of several feet (see CPL 120.80, subd 4, par [b]). Likewise, Olson's course of action unquestionably lessened the possibility of an escape attempt (see CPL 120.80, subd 4, par [a]). Since, under the factual pattern here, the police officer had a right to be where he was, the seizure of the marihuana which was in open view on the kitchen table was entirely proper. The evidence, therefore, should not have been suppressed. Shapiro, J. P., Cohalan, Margett and Hawkins, JJ., concur.