■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDWIN MARIN and ALBERTO SELASAR, Respondents. — Appeal by the People from an order of the Supreme Court, Queens County (Chetta, J.), dated December 7, 1981, which, after a hearing, granted defendants' motion to suppress evidence. Order reversed, on the law, motion denied, and case remitted to the Supreme Court, Queens County, for further proceedings. At the suppression hearing, Police Officer James Fucci testified that at approximately 2:00 A.M. on June 2, 1981,

in response to a radio signal pertaining to a "past robbery", he and his partner proceeded to Parker's Restaurant in Queens County. Upon arrival, he was met by Peter Gerlett who informed him that three men who had committed a robbery at the restaurant on April 20, 1981, had just left the premises and had driven away in a black Toyota. Gerlett told the officer that two of the men were Hispanics, one stocky, the other tall and thin, and that both were wearing blue paisley shirts. Their companion was described only as a black man. Returning to his patrol car, Fucci cruised the immediate area and, within 10 minutes, saw a black Toyota parked at the Red Wagon Diner on Astoria Boulevard. Fucci felt the hood of the vehicle and discovered that it was still warm. He then entered the diner and observed three men sitting in a rear booth who precisely fit the description given by Gerlett. Fucci left the diner and told his partner to call for assistance. Shortly thereafter, Fucci re-entered the diner accompanied by several other officers. He approached the men and ordered them to stand. Only codefendant Loverture, who is not a party to this appeal, complied. The other two, defendants Marin and Selasar, remained seated and Fucci repeated his request that they stand. Again they failed to comply. Defendant Marin, whose hands were initially on the table, then dropped them to his side. At this, Fucci grabbed Marin by the belt and, in doing so, felt the butt of a gun in Marin's waistband. Marin was placed under arrest and Fucci then subjected Selasar to a search, discovering an automatic pistol on Selasar's person. At the suppression hearing, when asked why he had seized Marin, Officer Fucci replied, "Because I had ordered him to stand up and he didn't stand up. I wasn't going to place my life in jeopardy by having him sitting down." Criminal Term suppressed both weapons holding that the information Fucci possessed, even when taken together with the failure of the defendants to stand when asked to do so, was insufficient to justify the officer's forcible seizure of Marin and the subsequent discovery of his weapon. The court reasoned further that, since the recovery of the firearm from Marin was improper, the subsequent frisk of Selasar was also unlawful. We now reverse. The information received by Officer Fucci came from an identified citizen who made a specific accusation against three described individuals. Such information is regarded as circumstantially reliable and may be acted upon by the police (see, e.g., *People v Moore,* 32 NY2d 67, 71, cert den 414 US 1011; *People v Hyter,* 61 AD2d 990, 991; *People v Crespo,* 70 AD2d 661). The description given by Gerlett of the individuals as a group was very distinctive, viz., one stocky Hispanic and one tall and thin Hispanic, both wearing blue paisley shirts and accompanied by a black man. A group matching the description was discovered in the area within 10 minutes of the officer's conversation with the witness. Moreover, the individuals were encountered in a diner at which was parked a recently driven black Toyota — a vehicle matching the description given by Gerlett of the car driven by the three perpetrators. Under these circumstances, the police plainly had probable cause to believe that the defendants and their companion had perpetrated the earlier robbery at Parker's Restaurant. Moreover, Fucci's seizure of Marin was appropriate and proper. The officer had reason to believe that he was facing three men who had perpetrated a robbery at a restaurant. It was entirely reasonable for him to assume that the three had been armed during the robbery and to entertain the fear, which proved to be well founded, that they were presently armed as well (see *People v Finalyson,* 76 AD2d 670, 680-681). The officer's seizure of Marin was a reasonable self-protective measure, especially since Marin had refused to stand when ordered to do so and, indeed, had dropped his hands from the table when confronted by the police (see *People v Benjamin,* 51 NY2d 267; *People v Finalyson, supra*). We note that, in its oral decision granting suppression on the ground that the

defendants' failure to stand was an insufficient predicate for the officer's action, Criminal Term made reference to the fact that "apparently defendants Selasar and Marin do not understand nor speak English". If true, and there was no evidence to that effect in the record of the suppression hearing, that fact would be entirely irrelevant. At a suppression hearing, the issue is generally limited to whether the information possessed by the officer reasonably justified his conduct (see, e.g., *People v Sanders,* 79 AD2d 688, 689-690). Even if the defendants did not comply with Fucci's order because they did not understand it, the officer had no reason to know that they were not fluent in English. All he knew was that they were not complying with his order and that Marin had dropped his hands from the table. It is this knowledge by which Fucci's ensuing action must be measured. In our view, the conduct of the police was reasonable in every respect. Accordingly, the defendants' motion to suppress should have been denied. Mollen, P. J., Damiani, Titone and Weinstein, JJ., concur.