OPINION OF THE COURT
Charles H. Cohen, J.
An indictment has been filed against defendant accusing him of criminal trespass in the first degree and criminal possession of a weapon in the third degree.
The defendant, claiming to be aggrieved by an unlawful search and seizure, has made a motion to suppress a gun seized from his person.
The People assert that the seizure of the gun was incidental to a lawful arrest which was made on January 17, 1980, by Police Officer Edwin Moore at Prospect Heights High School in Brooklyn.
The People have the burden in the first instance of going forward to show the legality of the police conduct. The burden of proof, however, remains with the defendant to show that his constitutional rights were violated. (People v Sanders, 79 AD2d 688.)
A pretrial suppression hearing was conducted before the court. The People produced Aaron King, a security officer at Prospect Heights High School, and Edwin Moore, a New *1088 York City police officer, as their witnesses. The defendant testified in his own behalf and defendant also produced Joseph Smartscham, an associate dean of Prospect Heights High School, as a witness.
FINDINGS OF FACT
On January 17, 1980, King was employed as a security officer. He was a group leader in charge of security at Prospect Heights High School, a public high school in Brooklyn. His duties included the clearing of the hallways in the school building and keeping the hallway traffic at a minimum. In this connection, he patrolled the hallways after the bell for classes was rung to make sure there were no persons cutting classes, or intruders, in the hallways. At about 11:30 a.m. on January 17,1980, while on duty, King saw a person, later identified as Dexter Dorner, the defendant herein, in the hallway on the fourth floor of the school. The bell for the commencement of classes had rung and, seeing defendant in the hallway at an exit, King went forward to him in order to find out what he was doing in the hallway at that time. Other than security guards, no one else was present in the hallway. Defendant then disappeared and King and the other security guards made a sweep of the building but did not find him. Upon returning to the fourth floor, King then found defendant at the same exit at which he had seen defendant before. King approached defendant and spoke with him. King did not know defendant. While defendant looked like a student, King did not know whether or not defendant was actually a student. At this time classes had been in progress for about 15 minutes.
King asked defendant for identification and defendant produced an old and dilapidated program card which bore the name “Roger Clark”. King was not satisfied with that program card and inquired of defendant as to his classes, particular periods and teachers. Defendant responded by saying that he did not remember and that he was a new student. Upon inquiry, King found that defendant did not have a pass entitling him to be in the hallway during classes. After making these inquiries and getting these responses, King asked defendant to accompany him to the dean’s office. Defendant, perhaps with some reluctance, *1089 went along with King and the other security officers to the dean’s office on the first floor. As the group approached the dean’s office, King saw Police Officer Moore, who was assigned to the school, and asked Moore to come along. Moore followed the group into the dean’s office. In the office they met with Joseph Smartscham who was the associate dean of Prospect Heights High School and whose duties included the handling of disciplinary problems in the school. King explained to Smartscham that he had found defendant in the hallway during classes and wanted to find out if defendant was registered in the school. King showed Smartscham the program card which defendant had produced bearing the name “Roger Clark”. Smartscham looked at the program card and at defendant and stated that defendant was not Roger Clark but was Dexter Dorner. Smartscham said that defendant had been suspended and did not belong in the school. Smartscham asked Moore to arrest the defendant for trespass. Police Officer Moore thereupon arrested defendant for criminal trespass and told defendant that he was being arrested for criminal trespass. Upon arresting defendant, Moore searched him and found the gun, which is the subject matter of this motion, in defendant’s waistband.
In making these findings the court is basically accepting the version of what took place in the dean’s office given by Moore rather than that of defendant and Smartscham who claimed that defendant was not initially arrested for criminal trespass but was arrested only after the gun was found.
The court finds that the defendant is not only an interested witness but is a particularly unreliable witness. With respect to Smartscham, the court finds him to be a very evasive witness and a less than credible witness. Although the school records of the defendant, introduced into evidence on defendant’s behalf, indicated that the defendant was not suspended on January 17, 1980, Smartscham at first testified that he was not sure as to whether defendant was suspended on that date. It appears to the court that Smartscham now realizes that he was in error in stating that defendant was suspended on January 17,1980, and is now trying to deny what he said at that time to the effect that defendant was suspended and should be arrested for *1090 trespassing in the school. It further appears that Smartscham is now trying to put the onus of any arrest solely upon the police in an apparent belief that this will clear him of any problems, real or imagined.
CONCLUSIONS OF LAW
Upon King finding defendant in the hallway of the school without a pass after the bell had rung signaling the commencement of classes, he properly asked defendant to proceed to the dean’s office. This action was well within King’s duties as a security officer in the school. King was doing what he was required to do in order to enforce a reasonable rule designed to keep intruders from wandering around the school and to keep students from cutting classes. It was certainly reasonable, upon finding a person wandering about school hallways between periods, for a school security officer to make inquiry of this person. Upon finding that such person did not have a required pass and could not remember anything regarding his classes, periods and teachers, it was reasonable to have that person proceed to the dean’s office. To the extent that there was an intrusion upon such person’s freedom of movement, it was a very reasonable one. (Cf. People v De Bour, 40 NY2d 210.) A person walking through a school building under these circumstances could reasonably expect that he would be asked to account for his presence to school personnel. As recognized in People v Scott D. (34 NY2d 483, 486-487): “A school is a special kind of place in which serious and dangerous wrongdoing is intolerable. Youngsters in a school, for their own sake, as well as that of their age peers in the school, may not be treated with the same circumspection required outside the school or to which self-sufficient adults are entitled.”
When Smartscham realized that the person who King had found in the hallway after the commencement of classes was not Roger Clark but was defendant, and told Police Officer Moore that defendant had been suspended, did not belong in the school and should be arrested for trespass, Moore had probable cause to arrest defendant. Smartscham was a specific, identified person known to Moore as a dean of the school. When he said that defendant was suspended, did not belong in the school and should be *1091 arrested for trespass, Moore acted reasonably in making the arrest. As stated in People v Sanders (79 AD2d 688, 689, supra): “information provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest. (See, e.g., People v Moore, 32 NY2d 67, 71, cert den 414 US 1101; People v Hyter, 61 AD2d 990, 991; People v Crespo, 70 AD2d 661.)”
Since the charge was made that defendant was unlawfully in the school building, there was probable cause to arrest defendant for criminal trespass in the third degree, a class B misdemeanor, which is defined in section 140.10 of the Penal Law as knowingly entering or remaining unlawfully in a “building”.
That, in fact, defendant had not been suspended on January 17, 1980, is not controlling as far as probable cause is concerned. As pointed out in People v Sanders (79 AD2d 688, 689-690, supra): “Although the truth of a citizen’s accusation often becomes the central issue at a criminal trial, the same is not true at a pretrial suppression hearing. There, the issue is generally limited to whether the nature of the accusation, and the circumstantial indications of its reliability, were sufficient to justify the ensuing police conduct. (Cf. People v Elwell, 50 NY2d 231; People v West, 44 NY2d 656.)” Here, when a dean of students in a high school states to a police officer that a person standing in front of them is not who he claimed to be but is another person who had no right to be in the school building, this statement is of sufficient reliability to justify the arrest. (See People v Inman, 80 AD2d 622.) The statement upon which Moore relied in making the arrest was not that of an ordinary person but was a statement made by a school official in the course of his duties which would give the statement a particularly high degree of reliability. Indeed, Smartscham, since his duties included the handling of student disciplinary problems, was at least to a limited extent, in a loco parentis relationship to students in the school. (See People v Scott D., supra; People v Jackson, 65 Misc 2d 909, 911, affd 30 NY2d 734; People v Bowers, 77 Misc 2d 697.)
*1092 Defendant’s argument that there is insufficient evidence to convict defendant of criminal trespass (People v Irving C., 103 Misc 2d 980; Matter of Luis C., 66 Misc 2d 907) is not determinative of the issue before this court on this motion. The question here is whether the information possessed by Police Officer Moore reasonably justified his arrest of defendant — whether there was probable, cause for that arrest. As stated in People v Sanders (79 AD2d 688, 690, supra): “An arrest is lawful if based upon probable cause. Although that standard is not met where the defendant’s conduct is ‘at most equivocal and suspicious’ (People v Davis, 36 NY2d 280, 282), an arrest need not be supported by information and knowledge which, at the time, excludes all possibility of innocence and points to the defendant’s guilt beyond a reasonable doubt. (See, e.g., People v Miner, 42 NY2d 937; Adams v Williams, 407 US 143, 149.) As the very name suggests, probable cause depends upon probabilities, not certainty. (Brinegar v United States, 338 US 160, 175.)” (See, also, People v McRay, 51 NY2d 594, 602; People v Marin, 91 AD2d 616; People v Nowell, 90 AD2d 735; People v Nimmons, 60 AD2d 129.)
Since Police Officer Moore had probable cause to arrest defendant, that arrest was lawful and, therefore, the police officer had the right to search defendant as an incident to a lawful arrest (Chimel v California, 395 US 752, 762-763; People v Perel, 34 NY2d 462, 466-467; People v Berrios, 28 NY2d 361, 368).
Accordingly, the motion to suppress is denied.