**Carole ARUM, Plaintiff,**

**v.**

**Richard MILLER, Director of Pupil Services, Syosset S.D., John Klesserath, John Wheeler, David M. Ohayon, County of Nassau Police Department, County of Nassau, N.Y., Defendants.**

No. 00–CV–7476 (DRH) (ETB).

United States District Court,
E.D. New York.

June 8, 2004.

Carole Arum, Syosset, for Plaintiff Pro Se.

Rains & Pogrebin, P.C., Mineola NY by Richard K. Zuckerman, Howard M. Miller, for Defendant Miller.

Nassau County Attorney's Office, Mineola, NY by Sean Strockyj, Carl Sandel, for the Nassau County Defendants.

Farrell, Fritz, Uniondale, NY by A. Kathleen Tomlinson.

## MEMORANDUM & ORDER

HURLEY, District Judge.

The various Defendants who are either a Nassau County agency or employees of that agency ("Nassau County Defendants") have filed a motion for summary judgment and for judgment on the pleadings. The Court exercises its discretion to treat the entire motion as a motion for summary judgment and, for the following reasons, grants the motion in part and denies the motion in part.

## I. BACKGROUND.

In evaluating a summary judgment motion, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996). The Court has considered these requirements while evaluating the undisputed facts in the context of the instant motion for summary judgment. All of the facts set out below were derived from the evidence identified in the parties' Local Civil Rule 56.1 statements of undisputed facts and all of the other evidence submitted in connection with the instant motion.[1]

On January 5, 2000, Plaintiff Carole Arum ("Plaintiff") went to Syosset Middle School to discuss her son's bus transportation with Mr. Richard Miller, the Director of Pupil Personnel Services ("Miller"). When she met with Miller, Plaintiff requested to review her son's educational file. Plaintiff proceeded to examine the file in the administrative area near Miller's office. At some point after Plaintiff began reviewing the file, Miller decided to take back the file. When Miller attempted to take the file away from Plaintiff, his elbow made contact with the Plaintiff. *See* Nassau County Defendants' Ex. H, Miller Aff. at 322. Plaintiff characterizes this contact as Miller "strok[ing] me in the mouth." Plaintiff's Affidavit/Affirmation in Opposition ¶ 4. Miller maintains that he told Plaintiff to leave the premises several times after this incident. Plaintiff maintains that she was never told to leave the premises by any school official.

Whatever its character, Miller called the police after the physical contact. A number of officers from the Second Precinct responded. Included among the responding officers were: Sergeant William Pohmer, Officer John Klesserath, Officer John Wheeler and Officer Steven Alevas. Both Plaintiff and Miller were interviewed by the police at that time. Plaintiff complained to the officers that she was "hit" by Miller. None of the officers on the scene observed any injuries to Plaintiff and concluded that Plaintiff was uncooperative with and disruptive to the school's administrative staff. It is undisputed that Miller told the police that he had asked Plaintiff to leave the school premises. While Plaintiff disputes whether Miller's statement to the police was true, there is no dispute that he made this statement to the police.

At this time, Plaintiff was told by the police that she had to leave or she would be arrested. Plaintiff responded to this instruction by holding out her hands. Plaintiff was then placed under arrest. Incident to this arrest, Plaintiff was handcuffed and placed in a chair. When Plaintiff was placed in the chair, the police allege that she started kicking, screaming

---

1. The Court notes that Plaintiff did actually submit a Local Civil Rule 56.1(b) counterstatement of undisputed facts. Although it is titled as an "Affidavit/Affirmation in Opposition" it does respond to each of the numbered paragraphs in the Nassau County Defendants' Rule 56.1(a) statement. The Court treats this as the Rule 56.1(b) statement rather than deeming all facts recited in the Rule 56.1(a) statement as undisputed.

and attempting to flee. Plaintiff disputes that she either kicked or attempted to flee but admits that she did scream. *See* Plaintiff's Mem. & Aff. at 2. Officer Klesserath alleges that he injured his left pinky while he attempted to restrain Plaintiff. Plaintiff also disputes this allegation. Plaintiff also alleges that she told the officer that she wished to be taken away in an ambulance. No matter what precisely happened, it is undisputed that Sergeant Pohmer then ordered Plaintiff to be placed on a stretcher and taken via ambulance to the Nassau University Medical Center for a psychological and physical evaluation.

Upon arriving at the Medical Center, Plaintiff was taken to the psychiatric ward where she was diagnosed as mentally fit for confinement. At some point after she arrived, the handcuffs were removed. After being psychologically cleared, Plaintiff was taken to the emergency room for a physical examination. After the physical, Plaintiff grabbed a medical record that was laying on the floor and shoved it into her pants. After she grabbed this record, Plaintiff was then handcuffed again. Although the character of resistance is disputed, Plaintiff admits that she resisted being handcuffed at this time. Officer Wheeler sustained a thumb injury while trying to place Plaintiff in handcuffs. (Plaintiff maintains that Officer Wheeler was not actually injured because he suffered a dislocation with related ligament tearing and not a broken bone.) Plaintiff claims that she was also "stroke[d] … on the back of the head" by the police during this handcuffing. Plaintiff's Affidavit/Affirmation in Opposition ¶ 25.

Eventually, Officer Klesserath and Officer Wheeler placed handcuffs on Plaintiff and brought her to a holding cell in the Medical Center. From that holding cell, Officer Michael Hospodar and Officer Anthony Rivera transported Plaintiff to the Second Precinct stationhouse. While at the Precinct, Officer Deirdre Malone unzipped Plaintiff's pants to remove the medical record. Plaintiff maintains that this search was done in front of "7 or[ ] 8" male officers and was done "in order to provoke me." *Id.* ¶ 29. At this point, Officer Anthony Rivera took two pictures of Plaintiff's face. *See* Nassau County Defendants' Ex. L. Plaintiff maintains that her pants were still unzipped when these photographs of her face were taken. A mugshot picture of Plaintiff was also taken. *See id.* Ex. M.

Plaintiff was subsequently charged with Assault in the Second Degree for injuring Officer Klesserath at the School and Officer Wheeler in the emergency room. These Assault charges went before a grand jury, which issued "no bill" on May 9, 2000. *See* Nassau County Defendants' Ex. D. Plaintiff was also charged with criminal trespass for her conduct at the school. Upon the urging of the school district, the criminal trespass charge was later dismissed. *See* Nassau County Defendants' Exhibit G.

On December 18, 2000, Plaintiff initiated the instant action by filing a complaint. In that complaint, Plaintiff alleged numerous claims in twenty-six paragraphs. These paragraphs include claims for false arrest, "lack of training of police employees by the police department," "false imprisonment," "risk of harm," "assault by Officer Klesserath," "assault by Officer Wheeler," "sexual harassment by police officers," "malicious prosecution of misdemeanor by police," "malicious prosecution by police dep[artment] and officer Klesserath with felony charges," "malicious prosecution (assault in the second degree) by Officer Wheeler and police dep[artment]," "denial of medical attention by police officer," "denial of medical attention by ambulance driver (police dep[artment] )," "pain and suffering," "malicious civil action … by 2

police officers," "excessive force and brutality," "discrimination against [a] minority [through the] refusal to provide [an][i]nterpret[er]," "abuse and misuse of authority of the police [department]," tampering with evidence, "conspiracy" by the police, negligent "abuse of due process and conspiracy," "malicious prosecution by Miller," "black mail" by the school district, "harassment" by the school district, intimidation by the school district, assault by Miller, abuse of authority by Miller, and "deliberate indifference" by the Dr. Streitman and the school board. *See* complaint ¶¶ 4.1–4.26. The case was originally assigned to United States District Judge Arthur D. Spatt and United States Magistrate Judge E. Thomas Boyle.

In a December 10, 2001 hearing before Judge Boyle, Plaintiff requested to withdraw her claims against Sergeant Ralph Hoffman. Judge Boyle granted this request. Plaintiff also requested leave to amend the complaint to include claims against Sergeant William Pohmer, Officer Michael Hospodar, Officer Anthony River and Officer Deirdre Malone. Judge Boyle denied these applications and explicitly advised Plaintiff that she had ten days to appeal this determination. Plaintiff filed no timely appeal. Plaintiff has not subsequently filed a motion to amend her complaint.

On March 20, 2002, Judge Spatt ruled on a motion by Miller, the Board of Education, Streitman and the Central School District to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. Judge Spatt ruled that: (1) the court had subject matter jurisdiction; (2) the court had personal jurisdiction; (3) the complaint adequately alleged § 1983 claims against Miller based on malicious

prosecution and excessive force; (4) complaint failed to adequately allege § 1983 claims against Miller based on abuse of authority, pain and suffering, failure to provide interpreter, and false arrest; (5) school principal was not entitled to qualified immunity; (6) Plaintiff failed to adequately allege a custom or policy against the Board of Education and the Central School District and (7) Plaintiff could not assert tort claims against the municipality prior to filing notice of claim. On February 8, 2003, Judge Spatt reconsidered that decision. Upon reconsideration Judge Spatt held that: (1) the court would reconsider and vacate its dismissal of Plaintiff's state law claims on the basis that she failed to comply with New York's notice of claims requirements and (2) to the extent that Plaintiff alleged state law claims against the board of education, school district, and superintendent, the court would decline to exercise supplemental jurisdiction over those claims. The Court also declined to consider a summary judgment motion on the merits until, in accordance with Local Civil Rule 56.2, notice was given to the pro se Plaintiff. In sum, after these two orders, all state law claims against Board of Education, the Central School District and Streitman were dismissed. Also, all 1983 claims against Miller for abuse of authority, pain and suffering, failure to provide interpreter, and false arrest were dismissed.

On July 28, 2003, the Court denied Miller's subsequent motion for summary judgment. In the order resolving that motion, Judge Spatt also gave the parties a October 14, 2003, trial date. However, on September 11, 2003, Judge Spatt recused himself from further participation in the instant case. The case was then reassigned to my chambers.

The instant motion was received fully briefed on December 23, 2003. In this

motion, the Nassau County Defendants seek dismissal of the case pursuant to both Rule 12(c) and Rule 56. *See* Fed.R.Civ.P. 12(c), 56. The Nassau County Defendants include all remaining Defendants except for Miller. For the purposes of clarity, the Court emphasizes that the instant motion, unlike the previous three, is made by these Nassau County Defendants. Accordingly, none of the prior decisions rendered in this case involved the specific claims or defendants embraced by the instant order.

## II. DISCUSSION.

### A. Nassau County Defendants' Motion for Judgment on the Pleadings and for Summary Judgment.

■] As mentioned *supra*, the Nassau County Defendants seek dismissal of this case pursuant to both Rule 12(c) and Rule 56. Because of the differing types of evidence that are admissible in each type of motion, *compare Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Rule 56); *Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991) (Rule 12(c)), it is nearly impossible to evaluate a motion that purports to proceed under both Rule 12(c) and Rule 56 at the same time. *See United States v. Certain Real Property,* 156 F.R.D. 26, 30 (E.D.N.Y.1994). Among other problems, such an endeavor would require the Court to write two statements of facts and carefully partition its arguments. The Nassau County Defendants have not endeavored to provide two statements of facts or to indicate which of its own arguments fall under which standard. Accordingly, the Court declines to consider any of the instant motion under the Rule 12(c) standard. Instead, the Court will consider the entire motion under the Rule 56 summary judgment standard.

■ The Court notes that this election does not require further notice to the parties. To the contrary, because the Nassau County Defendants clearly commenced the instant motion under both Rule 12(c) and Rule 56, the parties were on notice that Rule 56 applied. *See United States v. Certain Real Property and Premises Known as 44 Autumn Ave., Brooklyn, N.Y.,* 156 F.R.D. 26 30 (E.D.N.Y.1994). Moreover, the Court notes that Plaintiff has actually received notice from the Nassau County Defendants under Local Rule 56.2 and has treated this entire motion as one for summary judgment. Among other details, the Court notes that Plaintiff has filed a Local Rule 56.1(b) statement of undisputed facts and has submitted a significant amount of evidence. Neither of these items would be appropriate if Plaintiff were treating the instant motion as one for judgment on the pleadings. *See* Fed. R.Civ.P. 12(c). Thus, the Court concludes that no further notice is necessary prior to treating this entire motion as one for summary judgment.

### B. Summary Judgment Standard.

The legal principles employed by the Court when ruling upon a motion for summary judgment are well-established. It is axiomatic that summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). To meet this standard, the moving party bears the initial burden. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The moving party meets this initial burden by proffering evidence "showing the absence of a genuine issue as to any material fact." *Id.* Once the moving party

has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed.R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule*, 85 F.3d at 1011. In reviewing these materials, the Court "is required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.*

### C. All Claims Against the Nassau County Police Department.

The Nassau County Defendants cite *Davis v. Lynnbrook Police Dep't*, 224 F.Supp.2d 463 (E.D.N.Y.2002), for the proposition that the Nassau County Police Department is not a suable entity and that all claims should therefore be dismissed as to that defendant. The Court has read this case carefully and concluded that the Nassau County Defendants' argument is in error. The *Davis* case stands for the well-settled proposition that, under New York law, a town police department is not a suable entity. 224 F.Supp.2d at 477. However, the Nassau County Police Department is not a town police department. The Nassau County Defendants provide no persuasive briefing on why a county police department should be treated in the identical manner as a town police department. Thus, the Court declines to extend the principle of law expressed in the *Davis* case.

### D. All Claims Against Nassau County.

■ In the context of the instant summary judgment motion, the Nassau County Defendants have proffered evidence that indicate that there was no custom, practice or policy that related to Plaintiff's claims. This evidence is notable because the Nassau County Police Department is

indeed an arm of Nassau County. *See Carbajal v. County of Nassau*, 271 F.Supp.2d 415, 418 (E.D.N.Y.2003). As such, all claims against the Nassau County Police Department and Nassau County must meet certain requirements set forth by the Supreme Court. *See Rodriguez v. City of New York*, No. 02 Civ. 8203, 2004 WL 444089, at *2 (S.D.N.Y. March 10, 2004).

In determining the scope of a county's liability under section 1983, the Supreme Court has, "conclude[d] that a [county] cannot be held liable solely because it employs a tortfeasor—or, in other words, a [county] cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Department of Soc. Servs. of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "To impose liability under those circumstances would be to impose it simply because the [county] hired one 'bad apple.'" *City of Okla. City v. Tuttle*, 471 U.S. 808, 821, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). For those reasons, in the context of the instant summary judgment motion, Plaintiff must proffer evidence that would allow a reasonable trier of fact to conclude that a causal link exists between an official county policy or custom and the violation of her constitutional rights. *See Monell*, 436 U.S. at 692, 98 S.Ct. 2018. If Plaintiff does not meet this burden, *Monell* prohibits finding section 1983 liability against the county. *See id.; see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983); *Rodriguez*, 2004 WL 444089, at *2. The Nassau County Defendants maintain that Plaintiff has proffered no evidence that would allow a reasonable trier of fact to conclude that such a policy exists. Plaintiff predictably disagrees.

■ Plaintiff first argues that the officers were improperly trained. To establish a Section 1983 *Monell* claim based on

failure to train or supervise, the plaintiff must demonstrate municipal culpability and causation. *See Board of County Comm'rs v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 707 (S.D.N.Y.1999). A plaintiff must establish three factors to show municipal culpability and causation in a failure to train claim:

(1) that "a policymaker [of the municipality] knows 'to a moral certainty' that [its] employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights."

*Young v. County of Fulton,* 160 F.3d 899, 903–904 (2d Cir.1998) (quoting *Walker v. City of New York,* 974 F.2d 293, 297–298 (2d Cir.1992)).

The Court has reviewed the evidence submitted in connection with the instant summary judgment motion. The Court has paid particular attention to the arguments articulated on page three of Plaintiff's "Memorandum of Law and Affidavit." Plaintiff asserts lack of training as evidenced by the grand jury's failure to indict her, the fact that the secretaries at the school were not interviewed by the police, the fact that the police officer asked her to leave the school or she would be arrested and the fact that the Nassau County District Attorney provided her with a copy of the grand jury proceeding at her request. *See* Plaintiff's "Memorandum of Law and Affidavit" at 3. Upon this review, the Court determines that this evidence would not allow a reasonable trier of fact to conclude that any of the three factors relevant to a lack of training *Monell* claim were established. As such, Plaintiff has failed to proffer evidence sufficient to allow a failure to train *Monell* claim to proceed.

**■]** The Court has also considered the argument contained in numbered paragraph two on page three of Plaintiff's "Memorandum of Law and Affidavit." In this paragraph, Plaintiff indicates that "[t]here were several cases reported in the newspaper where the Nassau police officers arrested women for no reasons and subjected them to degradation ...." Plaintiff's Memorandum of Law and Affidavit at 3. Plaintiff maintains that these instances, as well as the circumstances of her own search, "show[ ] a custom of humiliation of prisoners ...." *Id.* This proffer is insufficient.

Plaintiff has merely submitted an affidavit that cryptically summarizes certain newspaper articles that were written at some indeterminate point. Thus, although she alleges "a custom of humiliation of prisoners" she does not possess any first-hand knowledge of such a custom. Nor does Plaintiff submit any competent evidence in support of such a custom. Finally, Plaintiff has not requested any further discovery on this point. In light of all of these facts Plaintiff has failed to create an issue of fact as to "a custom of humiliation of prisoners."

In support of this conclusion, the Court notes that Plaintiff was served with a statement to pro se litigants consistent with Local Civil Rule 56.2. In relevant part, this statement instructed Plaintiff that

[t]he claim you assert in your complaint may be dismissed without trial if you do not respond to this motion by filing your sworn affidavit or other papers .... As affidavit is a sworn statement of fact that is based upon personal knowledge that would be admissible at trial.

*See* Rule 56.2 Statement at 1 (emphasis removed).

Based upon the foregoing, the Court concludes that Plaintiff has failed to proffer any evidence adequate to allow a reasonable trier of fact to conclude that Nassau County or the Nassau County Police Department were engaged in policy, practice or custom that would create liability. For this reason, the Court concludes that summary judgment is appropriate as to all of Plaintiff's claims against Nassau County and, as an agency thereof, the Nassau County Police Department.

### E. Probable Cause and the False Arrest Claim.

■ Broadly construed, Plaintiff asserts false arrest claims against all of the Nassau County Defendants. *See* complaint ¶ 4.1. It is unclear whether Plaintiff asserts this claim under New York or federal law. *See id.* However, upon the evidence submitted in connection with the instant summary judgment motion, the claim cannot survive under either standard.

Plaintiff was arrested for and charged with criminal trespass in the third degree. *See* N.Y. Penal § 140.10 (McKinney's 2004).

> A person is guilty of criminal trespass in the third degree when [s]he knowingly enters or remains unlawfully in a building or upon real property .... located outside of a city with a population in excess of one million and where the building or real property is utilized as an elementary or secondary school in violation of a personally communicated request to leave the premises from a principal, custodian, school board member or trustee, or other person in charge thereof ....

N.Y. Penal § 140.10(d).

This statute requires communication to the purported trespasser of a "request to leave the premises from a principal, custodian, school board member or trustee, or other person in charge thereof ...." *Id.* Plaintiff hotly disputes whether Miller, or any other school official, asked her to leave. Therefore, genuine issues of fact remain as to this element of the underlying misdemeanor. However, this genuine factual dispute is not material for the purposes of the instant summary judgment motion.

■ A false arrest claim does not survive summary judgment merely because there is a dispute as to whether the claimant committed the underlying charged crime. "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined h[er] without h[er] consent and without justification." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (citing *Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)). A Section 1983 claim for false arrest, which derives from Fourth Amendment rights of an individual, does not substantially differ from a claim for false arrest under New York law. *See id.* Under either standard, the undisputed existence of probable cause to arrest constitutes both justification and "a complete defense to an action for false arrest." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994); *see also Weyant,* 101 F.3d at 852. The Nassau County Defendants maintain that the undisputed facts of the instant case establish probable cause for Plaintiff's arrest. Upon the undisputed evidence, the Court agrees.

■ Probable cause requires information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed. *See People v. McRay,* 51 N.Y.2d 594, 602, 435 N.Y.S.2d 679, 416 N.E.2d 1015 (1980). In the instant case, it is undisputed that Miller told the police on

the scene that he had asked Plaintiff to leave the premises. Such information, relayed by a person capable of revoking permission to be in the school, is sufficient to create probable cause for a police officer to arrest an individual for criminal trespass in the third degree. *See People v. Dorner*, 116 Misc.2d 1087, 458 N.Y.S.2d 982, 985 (N.Y.Sup.1982); *see also Matter of Troy F.*, 138 A.D.2d 707, 526 N.Y.S.2d 521, 522 (2d Dept.1988); *People v. Magwood*, 260 A.D.2d 246, 688 N.Y.S.2d 526, 526 (2d Dept.1999). Since the undisputed facts indicate that the officers were told that Plaintiff was asked to leave, whether or not she was actually asked to leave, no reasonable trier of fact could conclude that probable cause did not exist. For this reason, summary judgment is appropriate for all of Plaintiff's false arrest claims.

### F. Probable Cause and Wrongful Imprisonment.

] As discussed *supra*, the undisputed facts provided the arresting officer with probable cause to arrest Plaintiff for criminal trespass in the third degree. A claim for wrongful imprisonment cannot succeed where the undisputed facts establish probable cause because it vitiates a required element of this causes of action: that the arrest or confinement be without legal justification. *See Caban v. United States*, 728 F.2d 68, 71 (2d Cir.1984) (probable cause provides the legal justification for the confinement); *Rinaldi v. City of New York*, 756 F.Supp. 111, 116 n. 4 (S.D.N.Y.1990) (same). Since probable cause existed, the claims cannot succeed. Accordingly, summary judgment is also appropriate with regard to Plaintiff's claim for wrongful imprisonment.

### G. Excessive Force.

] Plaintiff asserts three claims which may be interpreted as Section 1983 claims for excessive force. *See* complaint ¶¶ 4.5, 4.6, 4.15. The degree of appropriate force an officer may use in effectuating an arrest should be analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The instant facts undisputably involve the placing of handcuffs on Plaintiff. Although placing handcuffs on an individual being arrested is generally reasonable, that act is not per se reasonable. *See Soares v. State of Connecticut*, 8 F.3d 917, 921 (2d Cir.1993). To determine whether the placing of handcuffs was reasonable in the context of a specific case, the following factors should be considered: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 922.

Under the undisputed facts, Plaintiff was arrested for minor violations. This fact would weigh against the reasonableness of using force. However, there is significant dispute as to whether Plaintiff resisted arrest and/or being handcuffed. As a matter of fact, instead of merely disputing the character and the relative intensity of her resistance, Plaintiff indicates that she never resisted at all. Similarly, there is significant dispute as to the conduct of the officers while arresting her and placing her in handcuffs. These persistent disputes as to Plaintiff's and the Officers' conduct constitute material issues of fact.[2] As such, the Court declines to

---

**2.** The Court notes that the parties spend significant time and energy discussing the photographs taken of Plaintiff on the date of the her arrest. In light of this focus by the parties, that Court emphasizes that, for the purposes

of the instant order, the Court relies upon the substantial dispute regarding the conduct and behavior of the parties, not the existence of any injuries.

grant summary judgment as to the excessive force claims. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir.1999) ("The issue of excessive force … was for the jury, whose unique task it was to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct.").

### H. Denial of Medical Attention.

, Plaintiff alleges denial of medical care at the time of her arrest and upon arrival at the precinct. These incidents must be evaluated under the Fourth Amendment standard. *See Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir.1989) ("we think the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer"). After application of that Fourth Amendment standard, the Court concludes that Plaintiff has failed to allege facts that would allow a reasonable trier of fact to find in her favor.

 Under the Fourth Amendment standard, the Court needs only to decide, interpreting the evidence in the manner most favorable to Plaintiff, whether the asserted denial of medical treatment was objectively unreasonable. This objective standard requires the Court to "focus[ ] on the circumstances confronting the police at the time of the arrest without regard to their underlying motives or attitude towards the suspect" *See Miller v. Lovett*, 879 F.2d 1066, 1070 (2d Cir.1989); *Calamia v. City of New York*, 879 F.2d 1025, 1034–35 (2d Cir.1989). Plaintiff has alleged scratches and bruises but has proffered no evidence that demonstrate such injuries. However, even assuming that Plaintiff submitted competent evidence of her injuries, which she has not, these injuries would not allow a reasonable trier of fact to conclude that Plaintiff suffered a violation of her Fourth Amendment rights. *See Freece v. Young*, 756 F.Supp. 699, 704 (W.D.N.Y.1991) (redness and bruising alone insufficient to allow a Fourth Amendment denial of medical treatment claim to succeed); *cf. Sulkowska v. City of New York*, 129 F.Supp.2d 274, 292 (S.D.N.Y.2001) (dismissing similar claims under the Fourteenth Amendment analysis). Plaintiff has not asserted that she suffered any broken bones, internal bleeding or any other injury that objectively required the intervention of medical professionals. Moreover, the undisputed facts show that she was actually taken to the hospital and treated. Accordingly, Plaintiff's claims for denial of medical care fail to survive the instant motion for summary judgment.

### I. Denial of Medical Care by the Ambulance Driver.

Plaintiff also alleges a claim for deprivation of medical care by the ambulance driver who took her to the hospital. For substantially the same reasons discussed *supra*, this claim cannot survive the instant summary judgment motion.[3]

### J. Failure to Provide an Interpreter.

 Reading the complaint broadly, Plaintiff also alleges the violation of a federal right when the police did not provide her an interpreter at the time of her arrest. *See* complaint ¶ 4.16. As stated previously in this case, no federally protected right provides for the provision of an interpreter in the instant circumstances. *See Arum v. Miller*, 193 F.Supp.2d 572

---

**3.** The Court also notes that Plaintiff has failed, after the conclusion of full discovery, to name or serve this individual.

(E.D.N.Y.2002). As such, this claim also cannot survive summary judgment.

### K. Sexual Harassment by Police Officers.

█] Plaintiff has alleged a claim for "sexual harassment by police officers." Complaint ¶ 4.7. Plaintiff has not named any of the officers that allegedly committed this "harassment" in the complaint. Nor has Plaintiff, in the context of the instant motion, sought leave to amend the complaint to include such officers.

█] "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d cir.1986). Although the Court acknowledges that direct participation is not always necessary, Plaintiff has also failed to name a supervisory official in the complaint. Moreover, even if such a supervisory individual were named in the complaint, Plaintiff has failed to provide the Court with any "actual or constructive notice of unconstitutional practices [or of] 'gross negligence' or 'deliberate indifference' by failing to act." *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989). For all of these reasons, the Court concludes that no claims for "sexual harassment" can survive the instant motion for summary judgment.

### L. Plaintiff's Claims Against the District Attorney's Office.

█ Plaintiff asserts a claim for "negligence of Nassau County and the District Attorneys['] abuse of process & conspiracy." Complaint ¶ 4.20. As discussed *supra*, all claims against Nassau County are dismissed. Thus, only the aspect of this claim relating to the Nassau County District Attorney's Office remains as a viable claim in this action. However, due to prosecutorial immunity, this claim against the Nassau County District Attorney's Office also must be dismissed.

█] Absolute prosecutorial immunity is generally limited to litigation-related activities and decisions whether to prosecute. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993); *Imbler v. Pachtman*, 424 U.S. 409, 430–431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (allowing absolute immunity for "initiating a prosecution" and activities "intimately associated with the judicial phase of the criminal process"). Still, the Second Circuit has held that absolute prosecutorial immunity "encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation." *Barrett v. United States*, 798 F.2d 565, 571–72 (2d Cir.1986). In the instant case, Plaintiff has failed to assert liability for anything other than the litigation-related activities of the Nassau County District Attorney's Office. Accordingly, all claims against the Nassau County District Attorney's office should be dismissed.

### M. Pain and Suffering.

█ Reading the complaint broadly, Plaintiff alleges a cause of action for "pain and suffering" against all defendants named in this action. *See* complaint ¶ 4.13. As there is no independent federal or state cause of action for "pain and suffering," the claim must be dismissed. *See Arum v. Miller*, 193 F.Supp.2d 572, 578 (E.D.N.Y. 2002).

### N. Malicious Civil Action.

█ Plaintiff also asserts a cause of action for "malicious civil action." *See* complaint ¶ 4.14. The Nassau County Defendants argue that there is no federal claim of this type. A review of the case law reveals that this contention is correct. As such, any federal claim for "malicious

civil action" should be dismissed. Such a claim, however, does exist under New York law.

 Under New York law, when a malicious prosecution claim is based on a civil action, the claim has the standard elements of a malicious prosecution claim along with an additional requirement of demonstrating a "special injury." *See Engel v. CBS Inc.*, 961 F.Supp. 660, 662 (S.D.N.Y.1997). To demonstrate this "special injury" in the context of the instant motion, Plaintiff must proffer evidence that would allow a reasonable trier of fact to conclude that she had "some interference with plaintiff's person or property . . . beyond the ordinary burden of defending a lawsuit." *O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996). Such interference may be demonstrated through provisional remedies as arrest, attachment, replevin or injunction. *See id.* However, some other "extraordinary burden beyond the ordinary burden of defending a civil suit" can also constitute the requisite interference. *See id.*

In the instant case, Plaintiff has failed to proffer any evidence that would allow a reasonable trier of fact to conclude that a "special injury" had been suffered. There is no indication that Plaintiff endured anything more rigorous than the usual efforts associated with defending a civil action. Such ordinary injuries are insufficient to support a claim for malicious civil prosecution. As such, Plaintiff has not proffered evidence by which a reasonable trier of fact could conclude that an element of her claim was established. For this reason, Plaintiff's state law claim for malicious civil prosecution cannot withstand the instant motion for summary judgment.

O. Detective O'Hayon.

Plaintiff named Detective O'Hayon as a defendant in the instant action. The Nassau County Defendants contend that the complaint contains no factual allegations with regard to his actions and that, for that reason, all claims against him should be dismissed. This representation is factually inaccurate. Plaintiff asserts that Detective O'Hayon filed false charges against her. *See* complaint 4.8, 4.9, 4.10. The evidentiary record supports the fact that Detective O'Hayon was involved with filing the criminal charges against Plaintiff. *See* Nassau County Defendants' Ex. B, C. Since the Nassau County Defendants' central contention is inaccurate, the Court declines to grant summary judgment as to Detective O'Hayon for the claims contained in paragraphs 4.8, 4.9 and 4.10. However, the Court does not end its analysis with those claims that are included in the complaint.

As discussed *supra*, Plaintiff has alleged three claims against Detective O'Hayon in the complaint. Nonetheless, in Plaintiff's "Memorandum of Law and Affidavit," she also states that "Det[ective] O'Hayon refused me medical attention." *See* Plaintiff's "Memorandum of Law and Affidavit" at 6. Such an allegation does not exist in the complaint. Nonetheless, giving this pro se Plaintiff the benefit of the doubt, the Court will both read this allegation into the complaint and also treat it as an item of evidence. However, as discussed *supra*, the "denial of medical care" claims are unsupported by evidence that would allow them to survive the instant summary judgment motion. Therefore, even as amended, the "denial of medical care" claim against Detective O'Hayon should be dismissed.

P. Tampering with Evidence.

 Plaintiff also asserts a claim that the police tampered with evidence. Complaint ¶ 4.18. After the close of full discovery, Plaintiff fails to name any defendants in connection with this count. Therefore,

assuming that such a claim exists under federal law, the claim cannot withstand the instant motion for summary judgment.[4] *See Williams v. Smith,* 781 F.2d at 323. To the extent that Plaintiff means to assert this claim against the Nassau Police Department in general, she has failed to present any evidence of a policy or custom that would impart liability upon those municipal entities. Finally, Plaintiff consents to the dismissal of this claim. *See* Plaintiff's "Memorandum of Law and Affidavit" at 6. In light of all of those reasons, the claim for tampering with evidence cannot withstand the instant summary judgment motion.

Q. Malicious Prosecution.

Because the Nassau County Defendants proffer no arguments why the malicious prosecution claims must fail on their merits, the Court does not reach these claims.

III. CONCLUSIONS.

For the reasons discussed *supra,* the Court GRANTS IN PART AND DENIES IN PART the summary judgment motion by the Nassau County Defendants. By way of summary, the following claims are dismissed: (1) all claims against the Nassau County Police Department and Nassau County are dismissed for failure to proffer evidence that would allow a reasonable trier of fact to conclude that custom or policy existed for any of Plaintiff's claims; (2) all claims for false arrest are dismissed due to the existence of probable cause under the undisputed facts; (3) all claims for wrongful imprisonment are also dismissed; (4) all claims for denial of medical care are dismissed; (5) all claims for fail-ure to provide an interpreter are dismissed; (6) all claims for sexual harassment are dismissed; (7) all claims for pain and suffering are dismissed; (8) all claims for malicious civil action are dismissed; (9) all claims against the Nassau County District Attorney's office are dismissed and (10) Plaintiff claims for tampering with evidence are dismissed.

For the purposes of clarity, the Court now lists the remaining claims in this action: (1) state law claim for assault by Officer Klesserath; (2) state law claim for assault by officer Wheeler; (3) claim for malicious prosecution by Detective O'Hayon, Officer Klesserath, and Officer Wheeler; (4) claim for excessive force and brutality against Klesserath and Wheeler; (5) claim for malicious prosecution against Miller and (6) state law claim for assault against Miller. With the claims set out, the Court instructs the parties to appear in my courtroom—room 930 at the Alphonse D'Amato Federal Courthouse—at two in the afternoon on July 6, 2004, for a final pretrial conference. The parties should be prepared to both meaningfully discuss settlement and set a trial date.

**SO ORDERED.**

---

4. Moreover the Court notes that the evidence in question, a 911 recording, did not result in a conviction or even an indictment. More-over, the Court notes that Plaintiff does not allege that any information was altered on the tape, merely that it was incomplete.